CLARK HILL LLP
Myriah V. Jaworski (SBN 336898)
mjaworski@clarkhill.com
350 Tenth Avenue, Suite 1200
San Diego, CA 92101
Telephone: (619) 557-0404
Facsimile: (619) 557-0460

*Attorneys for Defendant*
*Advanced Hair Restoration, LLC*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BENJAMIN BRAYFIELD, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ADVANCED HAIR RESTORATION, LLC,<br><br>Defendant. | Case No. 2:25-cv-11547-ODW-AS<br><br>*Assigned to Hon. Otis D. Wright, II*<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Hearing Date: April 20, 2026<br>Time: 1:30 PM<br>Dept.: Courtroom 5D<br><br>Complaint Filed: 12/04/2025 |

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

**PLEASE TAKE NOTICE** that on April 20, 2026 at 1:30 PM, or as soon thereafter as the matter may be heard, before Honorable Otis D. Wright, II, in Courtroom 5D (Floor 5) of the above-entitled Court, located at First Street United States Courthouse, 350 W 1st St, Los Angeles, CA 90012, Defendant Advanced Hair Restoration, LLC ("Defendant"), by and through its attorneys of record, will and hereby moves for an order dismissing the Complaint ("Complaint"), with prejudice pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP").

This motion is based upon the Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), the following memorandum of points and authorities, a proposed order, the complete file and records in this action, the argument of counsel; and such other matters as the Court may consider.

Respectfully submitted,

Dated: March 20, 2026

CLARK HILL LLP

By: /s/ *Myriah V. Jaworski*
Myriah V. Jaworski
Attorney for Defendant Advanced Hair Restoration, LLC

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.3**

The parties conferred on March 10, 2026 to discuss the substance of the contemplated motion and any potential resolution. Following conferral, the parties were unable to reach a resolution. Plaintiff's counsel indicated that no additional time was needed to review Defendant's proposed motion and agreed that Defendant should proceed with filing. Pursuant to L.R. 7-3, Myriah V. Jaworski's Declaration is attached.

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 11-6.2**

The undersigned, counsel of record for Defendant certifies that this brief contains 6,996 words, which complies with the word limit of L.R. 11-6.1.

Dated: March 20, 2026 By: *s/Myriah V. Jaworski*
Myriah V. Jaworski

**MEMORANDUM OF POINTS AND AUTHORITES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION .......... 1

II. RELEVANT ALLEGATIONS .......... 2

III. ARGUMENT .......... 3

A. PLAINTIFF'S CLAIMS ARE TIME-BARRED .......... 3

B. PLAINTIFF LACKS ARTICLE III STANDING .......... 5

1. Fed. R. Civ. P. 12(b)(1) Standard .......... 5

2. Plaintiff's Complaint Fails to Facially Allege a Concrete Harm .......... 6

3. Plaintiff Fails to Allege any Fairly Traceable Injury .......... 9

4. Plaintiff Lacks Standing to Seek Injunctive Relief .......... 9

C. PLAINTIFF'S CLAIMS ALSO FAIL UNDER RULE 12(b)(6) .......... 10

1. Fed. R. Civ. P. 12(b)(6) Standard .......... 10

2. Electronic Communications Privacy Act – 18 U.S.C. § 2511 .......... 10

(a) ECPA's Party Exception Applies .......... 10

(b) Defendant Consented to the Tracking Technologies on the Website .......... 11

(c) The ECPA's "Crime-Tort" Exception Does Not Apply .......... 11

(d) No Plausible Interception of "Content" Information Allegation .......... 13

3. Plaintiff Fails to State a Claim Under Any Clause of § 631(a) .......... 13

(a) Plaintiff fails to allege violation of § 631(a)'s first three clauses .......... 14

(b) Plaintiff fails to allege violation of § 631(a) Clause Four .......... 14

4. Plaintiff's CIPA § 632 Claim Fails .......... 18

(a) No Confidential Communication Alleged Under § 632 .......... 19

(b) Plaintiff Fails to Allege Eavesdropping or Recording .......... 20

(c) CIPA § 632 Does Not Apply to the Internet .......... 21

5. Plaintiff Fails to State a Constitutional Invasion of Privacy Claim .......... 21

IV. CONCLUSION .......... 23

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*A.S. v. SelectQuote Ins. Servs.*,
2024 WL 3881850 (S.D. Cal. Aug. 2024) .......... 21

*Abbie v. Shasta Cnty.*,
2023 WL 4274135 (E.D. Cal. June 2023) .......... 20

*Adams v. Johnson*,
355 F.3d 1179 (9th Cir. 2004) .......... 10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 10

*B.K. v. Eisenhower Med. Ctr.*,
721 F. Supp. 3d 1056 (C.D. Cal. 2024) .......... 10, 12

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 10

*Bongiovanni v. State Farm Fin. Servs., F.S.B.*,
2015 WL 13916261 (C.D. Cal. July 2015) .......... 22

*Brodsky v. Apple Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020) .......... 17

*Byars v. Goodyear Tire and Rubber Co.*,
654 F. Supp. 3d 1020 (C.D. Cal. 2023) .......... 16

*Byars v. Sterling Jewelers, Inc.*,
2023 WL 2996686 (C.D. Cal. Apr. 2023) .......... 6, 7

*Catsouras v. Dep't of Cal. Highway Patrol*,
181 Cal. App. 4th 856 (2010) .......... 22

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983) .......... 9

*D'Angelo v. FCA US, LLC*,
726 F. Supp. 3d 1179 (S.D. Cal. 2024) .......... 4

*Deteresa v. Am. Broad. Companies, Inc.*,
121 F.3d 460 (9th Cir. 1997) ........ 12, 22

*Doe v. Eating Recovery Ctr. LLC*,
2025 WL 2971090 (N.D. Cal. Oct. 2025) ........ 2, 14

*Doe v. Talkiatry Mgmt. Servs., LLC*,
2026 WL 206483 (C.D. Cal. Jan. 2026) ........ 12

*Esparza v. Kohl's, Inc.*,
723 F. Supp. 3d 934 (S.D. Cal. 2024) ........ 16

*Esparza v. UAG Escondido A1 Inc.*,
2024 WL 559241 (S.D. Cal. Feb. 2024) ........ 14, 15

*In re Facebook Internet Tracking Litig.*,
263 F. Supp. 3d 836 (N.D. Cal. 2017) ........ 21

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ........ 10

*Fayer v. Vaughn*,
649 F.3d 1061 (9th Cir. 2011) (per curiam) ........ 10

*Flanagan v. Flanagan*,
27 Cal. 4th 766 (2002) ........ 19

*Fox v. Ethicon Endo-Surgery, Inc.*,
35 Cal. 4th 797 (2005) ........ 4, 5

*Garcia v. YETI Coolers, LLC*,
2023 WL 5736006 (C.D. Cal. May 2023) ........ 17

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
806 F.3d 125 (3d Cir. 2015) ........ 11

*In re Google, Inc. Privacy Pol'y Litig.*,
58 F. Supp. 3d 968 (N.D. Cal. 2014) ........ 22

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) ........ 14

*Griffith v. TikTok, Inc.*,
2024 WL 5279224 (C.D. Cal. Dec. 2024) ........ 19

*Gutierrez v. Converse Inc.*,
2025 WL 1895315 (9th Cir. July 2025) .......... 17

*Hammerling v. Google LLC*,
2022 WL 17365255 (N.D. Cal. Dec. 2022) .......... 22

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) .......... 16, 17

*Hayden v. Retail Equation, Inc.*,
2022 WL 2254461 (C.D. Cal. May 2022) .......... 22

*Heiting v. Taro Pharms. USA, Inc.*,
728 F. Supp. 3d 1112 (C.D. Cal. 2024) .......... 14

*Hill v. Nat'l Collegiate Athletic Ass'n*,
7 Cal. 4th 1 (1994) .......... 21, 22

*United States ex rel. Hong v. Newport Sensors, Inc.*,
2016 WL 8929246 (C.D. Cal. May 2016) .......... 4

*I.C. v. Zynga, Inc.*,
600 F. Supp. 3d 1034 (N.D. Cal. 2022) .......... 6

*Jones v. Peloton Interactive, Inc.*,
720 F. Supp. 3d 940 (S.D. Cal. 2024) .......... 9

*Khamooshi v. Politico LLC*,
2025 WL 2822879 (N.D. Cal. Oct. 2025) .......... 6

*Kishnani v. Royal Caribbean Cruises Ltd.*,
2025 WL 1745726 (N.D. Cal. June 2025) .......... 7

*Konop v. Hawaiian Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002) .......... 13

*Licea v. Vitacost.com, Inc.*,
683 F. Supp. 3d 1118 (S.D. Cal. 2023) .......... 20

*Lien, et al. v. Talkdesk, Inc.*,
2025 WL 551664 at *1 (N.D. Cal. 2025) .......... 6

*Lightoller v. Jetblue Airways Corp.*,
2023 WL 3963823 (S.D. Cal. June 2023) .......... 6

*Maghoney v. DotDash Meredith, Inc.*,
2026 WL 497402 (S.D. Cal. Feb. 2026) ........................................ 7, 8

*Mastel v. Miniclip SA*,
549 F. Supp. 3d 1129 (E.D. Cal. 2021) ........................................ 14, 18

*McGowan v. Weinstein*,
505 F. Supp. 3d 1000 (C.D. Cal. 2020) ........................................ 3, 5

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) ........................................ 12

*Mikulsky v. Noom, Inc.*,
682 F. Supp. 3d 855 (S.D. Cal. 2023) ........................................ 6, 7

*Miller v. Fuhu, Inc.*,
2015 WL 12914393 (C.D. Cal. Mar. 2015) ........................................ 6

*Minnich v. Ne. Sch. Dist.*,
2021 WL 3166013 (M.D. Pa. July 2021) ........................................ 7

*Mitchell v. Sonesta Int'l Hotels Corp.*,
2024 WL 4471772 (C.D. Cal. Oct. 2024) ........................................ 19

*Navarro v. Block*,
250 F.3d 729 (9th Cir. 2001) ........................................ 10

*Nguyen v. Nissan North America, Inc.*,
487 F. Supp. 3d 845, 856 (2020) ........................................ 5

*NovelPoster v. Javitch Canfield Grp.*,
140 F. Supp. 3d 938 (N.D. Cal. 2014) ........................................ 18

*People v. Lee*,
31 Cal. 4th 613 (2003) ........................................ 14

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) ........................................ 6

*Posadas v. Goodyear Tire & Rubber Co.*,
2024 WL 5114133 (S.D. Cal. Dec. 2024) ........................................ 8

*Prima Asset Corp. v. Goh*,
2017 WL 11662669 (C.D. Cal. Dec. 2017) ........................................ 8

*Revitch v. New Moosejaw, LLC*,
2019 WL 5485330 (N.D. Cal. Oct. 2019) .... 19

*Ribas v. Clark*,
38 Cal. 3d 355 (1985) .... 13

*Rodriguez v. Ford Motor Co.*,
2024 WL 1223485 (S.D. Cal. Mar. 2024) .... 14, 19

*Saedi v. SPD Swiss Precision Diagnostics GMBH*,
2025 WL 1141168 (C.D. Cal. Feb. 2025) .... 11

*Smith v. Yeti Coolers, LLC*,
2025 WL 877127 (N.D. Cal. March 2025) .... 15

*Smith v. YETI Coolers, LLC*,
754 F. Supp. 3d 933 (N.D. Cal. 2024) .... 20

*Spokeo, Inc. v. Robins*,
578 U.S. 330, 341 (2016) .... 6

*Swarts v. Home Depot, Inc.*,
689 F. Supp. 3d 732 (N.D. Cal. 2023) .... 14, 19

*Thomas v. Papa Johns Int'l, Inc.*,
2024 WL 2060140 (S.D. Cal. May 8, 2024) .... 19

*Touma v. EEOC*,
2020 WL 2332171 (C.D. Cal. Jan. 2020) .... 21

*Turner v. Nuance Commc'ns, Inc.*,
2024 WL 2750017 (N.D. Cal. May 2024) .... 20

*Urbaniak v. Newton*,
226 Cal. App. 3d 1128 (1991) .... 22

*Winsor v. Sequoia Benefits & Ins. Servs.*,
62 F.4th 517, 523 (9th Cir. 2023) .... 5

*Yoon v. Lululemon USA. Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) .... 7, 13, 16, 21

*Yumul v. Smart Balance, Inc.*,
733 F. Supp. 2d 1117 (C.D. Cal. 2010) .... 4, 5

*Zarif v. Hwareh.com, Inc.*,
789 F. Supp. 3d 880 (S.D. Cal. 2025) .......... 12

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) .......... 13, 15, 16, 17

**Statutes**

18 U.S.C. § 2510(4) .......... 13

18 U.S.C. § 2510(8) .......... 13

18 U.S.C. § 2511 .......... 11

18 U.S.C. § 2520(e) .......... 3

Cal. Civ. Proc. Code § 340(a) .......... 3

Cal. Pen. Code § 631 .......... 15

Cal. Pen. Code § 631(a) .......... *passim*

Cal. Pen. Code § 632 .......... *passim*

CIPA .......... 2, 3

ECPA .......... *passim*

Electronic Communications Privacy Act .......... 11

Plaintiff's Electronic Communications Privacy Act .......... 1

Privacy Act § .......... 2

Wiretap Act .......... 16

**Rules**

Fed. R. Civ. P. 12(b)(1) .......... 2, 6

Fed. R. Civ. P. 12(b)(6) .......... 1, 2, 10

**Constitutions**

California Constitution .......... 3, 6

U.S. Const. art. III .......... *passim*

**Other Authorities**

https://web.archive.org/web/20230507115124/https://www.advancedhair.com/privacy .................................. 5

https://web.archive.org/web/20190918021448/https://www.advancedhair.com/privacy] and 2023 ............................................ 5

www.advancedhair.com ....................................................................................... 1

## I. <u>INTRODUCTION</u>

Plaintiff Benjamin Brayfield ("Plaintiff") asserts various privacy based claims based on Defendant Advanced Hair Restoration, LLC's ("Defendant" or "Advanced Hair") alleged use of a routine website analytics tools from third parties on its public facing website, www.advancedhair.com ("Website"). [ECF No. 1][1]. This lawsuit is exactly what it appears to be: a boilerplate privacy complaint that fails at every turn while targeting common technology used by virtually every commercial website.

To begin, Plaintiff's Complaint fails a facial attack to Article III standing. Plaintiff's 197-paragraph complaint contains *three paragraphs* about his actual alleged experience with Defendant's Website. [ECF No. 1 at ¶ 7, 8, 9]. These limited allegations also reveal three threshold defects. First, the claims are time-barred and brought ***nearly three years*** after the relevant statute of limitations has run. Plaintiff filed suit on December 4, 2025, based on an alleged "interception" of his information on or around November 2022. [*Id.* ¶ 8]. Yet, he pleads no facts sufficient to support tolling the limitations period.

Second, Plaintiff lacks Article III standing required to advance his outdated claim. He alleges only that he entered routine contact and scheduling information to request a consultation when confirming his appointment, not that any confidential information was disclosed or that he suffered any concrete harm. [*Id.* ¶ 8]. Plaintiff never alleges that this specific information was actually captured, and the term "sensitive appointment details" is left entirely undefined. [*Id.* ¶¶ 8, 9]. Plaintiff lacks standing to seek injunctive relief because he is now aware of the alleged tracking.

Third, even if Plaintiff could somehow meet the threshold of demonstrating Article III, each of his claims fail under Rule 12(b)(6). Plaintiff's Electronic Communications Privacy Act ("ECPA") claims fails because (a) he was a party to the communication allegedly intercepted, (b) Defendant consented to the alleged

[1] For consistency, references are to the CM/ECF-generated document and page numbers, as well as to the paragraph numbers in the pleading.

tracking technologies, (c) the "crime-tort exception" does not apply, and (d) he fails to allege interception of "content" information.[2] Plaintiff's California Invasion of Privacy Act ("CIPA") §§ 631(a) and 632 claims fail because the Complaint (a) does not plausibly allege interception of communication contents, (b) does not overcome the party and consent exceptions, (c) does not plead aiding and abetting elements under Clause Four, and (d) merely challenges routine internet interactions facilitated by third-party analytics tools. Further, Plaintiff's constitutional invasion of privacy claim also fails because he fails to allege: (a) intrusion upon protected private information, and (b) an intrusion that is highly offensive and an "egregious breach of social norms."

For all of these reasons, this Court should dismiss Plaintiff's Complaint pursuant to Rules 12(b)(1) and 12(b)(6).

## II. <u>RELEVANT ALLEGATIONS</u>

Plaintiff brings this putative class action based on his use of the Website, which allegedly allows prospective patients to obtain information about hair restoration procedures and schedule in-person consultations. [ECF No. 1 at ¶¶ 1–2, 11, 24–29]. Defendant allegedly operates hair restoration clinics nationwide and uses the Website as a portal for marketing its services and booking appointments. [*Id.* ¶¶ 1–2, 11].

Plaintiff alleges that, in or around November 2022, he used the Website to schedule a hair transplant consultation and, in doing so, entered information such as his name, email address, and phone number while selecting the clinic location and appointment date and time. [*Id.* ¶ 8]. He further alleges that he accessed the Website using the same device he used to access his Facebook and Google accounts. [*Id.* ¶ 7].

---

[2] To the extent this Court find any ambiguity in the application of ECPA or CIPA to internet technologies, this Court should apply the rule of lenity and resolve those issues in Defendant's favor. *Doe v. Eating Recovery Ctr. LLC*, 2025 WL 2971090 at *1 (N.D. Cal. Oct. 2025).

The Complaint asserts that Defendant embedded third-party tracking technologies—including tools associated with Google, Meta, and The Trade Desk (collectively, the "Third Parties")—on the Website for purposes of advertising, analytics, and marketing. [*Id.* ¶¶ 5, 24–26, 49, 53, 77–79, 88–91, 100]. Plaintiff alleges that these technologies transmitted user interactions with the Website to those Third Parties without user consent. [*Id.* ¶¶ 5–11, 24–26, 49, 77–79, 88–95].

According to Plaintiff, the Website permits users to select a clinic location and appointment time and to enter contact information into online form fields to schedule a consultation, and that information entered during this process was allegedly disclosed to the Third Parties through the embedded tracking code. [*Id.* ¶¶ 27–29, 66–75, 86–92, 100–20]. The Complaint also describes, at length, how routine web communications operate through HTTP requests, cookies, and browser-based interactions, and alleges that Defendant's Website code caused users' browsers to send additional transmissions to third-party services in the background. [*Id.* ¶¶ 30–35, 44, 57, 91–95, 100–20]. Plaintiff characterizes this process as the functional equivalent of a "wiretap." [*Id.* ¶¶ 101–03].

Based on these allegations, Plaintiff asserts claims under the ECPA, CIPA, and the California Constitution, all arising from the same core theory that Defendant's use of marketing and analytics tools enabled the Third Parties to receive information generated during Website interactions. [*Id.* ¶¶ 1–4, 107–60].

## III. <u>ARGUMENT</u>

### A. <u>PLAINTIFF'S CLAIMS ARE TIME-BARRED</u>

CIPA claims have a one-year statute of limitations. Cal. Civ. Proc. Code § 340(a). Claims under the ECPA are subject to a two-year statute of limitations. 18 U.S.C. § 2520(e). And while courts previously applied a one-year statute of limitations to constitutional invasion of privacy claims, it is now two years. *See McGowan v. Weinstein*, 505 F. Supp. 3d 1000, 1018 n.11 (C.D. Cal. 2020).

Here, Plaintiff filed his Complaint December 4, 2025. [ECF No. 1]. He alleges

that "[i]n or around November 2022, [he] scheduled a hair transplant consultation with Defendant through the Website." [*Id.* ¶ 8]. Accordingly, the claims accrued in November 2022 and are time-barred unless the discovery rule applies.

Pursuant to the "discovery rule," the accrual of a cause of action is postponed until the "plaintiff discovers, or has reason to discover, the cause of action." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 807 (2005). A plaintiff "must specifically plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *Id.* at 808. "The burden is on the plaintiff to show diligence, and conclusory allegations will not withstand demurrer[.]" *Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117, 1130 (C.D. Cal. 2010).

Here, Plaintiff does not plead facts supporting delayed discovery. While he allegedly visited the Website "[i]n or around November 2022," [ECF No. 1 at ¶ 8], Plaintiff never alleges when or how he discovered the supposed violation, the manner of discovery, or why he could not have discovered it earlier through ordinary diligence. These omissions are dispositive.

Additionally, Plaintiff's own theory appears to rely in part on a purported Privacy Policy "guarantee." [*Id.* ¶ 25, Fig. 1]. Yet, Plaintiff tellingly quotes only part of that policy. The full Privacy Policy begins with the qualifier "except as otherwise provided herein," and goes on to expressly disclose the use of cookies, third-party data sharing, and Google Analytics. [*See id.*][3]. Plaintiff cannot cherry-pick a single sentence from the Privacy Policy while ignoring the disclosures that follow. The Privacy Policy, which existed in substantively identical form since at least 2019 and was publicly accessible on the Website at the time of Plaintiff's visit, confirms that

[3] Defendant respectfully requests that the Court take judicial notice of the Wayback Machine screenshot of Defendant's 2019 Privacy Policy [https://web.archive.org/web/20190918021448/https://www.advancedhair.com/privacy] and 2023 Privacy Policy [https://web.archive.org/web/20230507115124/https://www.advancedhair.com/privacy], as such records are properly subject to judicial notice. *See United States ex rel. Hong v. Newport Sensors, Inc.*, 2016 WL 8929246, at *3 (C.D. Cal. May 2016); *D'Angelo v. FCA US, LLC*, 726 F. Supp. 3d 1179, 1190 (S.D. Cal. 2024).

Plaintiff had the means to discover the alleged violation through ordinary diligence, yet waited nearly three years to sue.

Courts are clear that the delayed discovery rule is not presumed and is not satisfied by vague allegations that a plaintiff learned of the injury "shortly before the filing of the initial complaint in this matter." [*See id.* ¶ 128]. It requires specific pleading of both the time and manner of discovery and an explanation as to why earlier discovery was not possible with reasonable diligence. *Fox*, 35 Cal. 4th at 808. Courts routinely reject invocation of the discovery rule where a complaint fails to allege the specific time and circumstances of discovery or relies on conclusory assertions of delayed awareness. *See, e.g., Nguyen v. Nissan North America, Inc.*, 487 F. Supp. 3d 845, 856 (2020) (finding that Plaintiff failed to allege the time and manner of discovery or facts demonstrating reasonable diligence, as required to invoke the discovery rule); *McGowan*, 505 F. Supp. 3d at 1018–19 (same); *Yumul*, 733 F. Supp. 2d at 1131 (same).

Because the Complaint is silent as to the essential elements required to invoke delayed discovery, Plaintiff cannot carry his burden to avoid the statute of limitations for any of his claims. Accordingly, the claims therefore began accruing at the time of the alleged November 2022 Website interaction and are untimely as a matter of law. Therefore, Plaintiff's claims should be dismissed on this basis alone.

**B. <u>PLAINTIFF LACKS ARTICLE III STANDING</u>**

If the Court were to determine that the claims are timely, they must still be dismissed for lack of Article III standing for the reasons set forth below.

**1. <u>Fed. R. Civ. P. 12(b)(1) Standard</u>**

Rule 12(b)(1) allows a party to seek dismissal of an action for lack of subject matter jurisdiction. Conclusory allegations are inadequate; Plaintiff must "clearly [...] allege facts demonstrating each [standing] element," even in a putative class actions. *Winsor v. Sequoia Benefits & Ins. Servs.*, 62 F.4th 517, 523 (9th Cir. 2023). A bare procedural violation is insufficient to demonstrate Article III standing.

*Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016); *Popa v. Microsoft Corp.*, 153 F.4th 784, 791 (9th Cir. 2025) ("*TransUnion* contemplates a standing inquiry particularized to a plaintiff's circumstances and benchmarked to a specific tort[.]"); *Khamooshi v. Politico LLC*, 2025 WL 2822879, at *3 (N.D. Cal. Oct. 2, 2025) ("*Khamooshi I*") (applying *Popa* to CIPA and privacy claims under the California Constitution).

### 2. Plaintiff Fails to Facially Allege a Concrete Harm

Courts consistently hold that, for claims premised on alleged privacy-based violations arising from the interception of information by internet technologies, a statutory violation *alone* does not satisfy Article III's injury-in-fact requirement. *See Popa*, 153 F.4th at 791; *see also Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855, 863 (S.D. Cal. 2023); *Khamooshi I*, 2025 WL 2822879, at *3; *Lightoller v. Jetblue Airways Corp.*, 2023 WL 3963823, at *4 (S.D. Cal. June 2023). Rather, a plaintiff must identify the specific personal information disclosed that implicates a protectible privacy interest to survive a motion to dismiss. *See Byars v. Sterling Jewelers, Inc.*, 2023 WL 2996686, at *3 (C.D. Cal. Apr. 2023). This is a fact-specific inquiry that "requires [this Court's] consideration of the nature of the allegedly intercepted information." *See Khamooshi v. Politico LLC*, 786 F. Supp. 3d 1174, 1178 (N.D. Cal. 2025) ("*Khamooshi II*"); *Byars*, 2023 WL 2996686, at *3. The alleged disclosure must be "highly offensive to a reasonable person." *I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1049–50 (N.D. Cal. 2022). Courts have held that the following categories information <u>does not</u> implicate a protectable privacy interest:

- Basic contact information, including one's email address, phone number, or name. *Zynga*, 600 F. Supp. 3d at 1049–50; *see also Lien, et al. v. Talkdesk, Inc.*, 2025 WL 551664 at *1 (N.D. Cal. 2025) (no Article III standing for CIPA claim based on alleges disclosure of "plaintiffs' phone numbers and questions they asked about store hours, events, and products"); *Miller v. Fuhu, Inc.*, 2015 WL 12914393, at *2 (C.D. Cal. Mar. 2015).

- General browsing data and device data. *Kishnani v. Royal Caribbean Cruises Ltd.*, 2025 WL 1745726, at *4 (N.D. Cal. 2025) ("IP addresses, […] can provide 'device and browser information' […] the collection of which purportedly invaded [p]laintiff's privacy in the instant case, […] but it is well established […] that 'there is no legally protected privacy interest[.]'"); *Khamooshi II*, 786 F. Supp. 3d at 1179–80; *see also Yoon v. Lululemon USA. Inc.*, 549 F. Supp. 3d 1073, 1086 (C.D. Cal. 2021).
- Appointment Data. *Minnich v. Ne. Sch. Dist.*, 2021 WL 3166013, at *4 (M.D. Pa. July 2021) (holding disclosure of physician names and appointment times did not implicate a constitutionally protected privacy interest because it did not reveal plaintiff's confidential medical information).
- Information voluntarily provided to third parties. *Maghoney v. DotDash Meredith, Inc.*, 2026 WL 497402, at *5 (S.D. Cal. Feb. 2026).
- Generic or unspecific information. *See Mikulsky*, 682 F. Supp. 3d at 864 ("Plaintiff's conclusory allegation that she disclosed 'personal information'" insufficient); *Khamooshi II*, 786 F. Supp. 3d at 1179–80 (same); *Byars* 2023 WL 2996686, at *3 (same).

Here, Plaintiff alleges only that he voluntarily provided his name, email address, phone number, clinic location, and the appointment date and time in order to confirm the appointment through the Website. [ECF No. 1 at ¶8]. These are routine contact information and scheduling details—not information concerning Plaintiff's medical condition, treatment, or any confidential communication. Notably, Plaintiff offers no further description of what these alleged internet communications contained or whether Plaintiff conveyed anything beyond selecting an office location and an available time slot. Nor does Plaintiff allege that anyone contacted him based on his Website interaction, that his information was made publicly visible, or that any of his information was directly linked to him. At most, the data was associated with basic scheduling details and contact information. This

is precisely the type of information a person voluntarily turns over to third parties—and Plaintiff does not even allege how he became aware it was shared—which carries no legitimate expectation of privacy. *See Maghoney*, 2026 WL 497402, at *5. And "generalized and conclusory allegations that the [alleged Pixels are] capable of capturing private data" are "insufficient to assert that [Plaintiff] suffered a concrete injury as a result of [Defendant's] conduct." *Posadas v. Goodyear Tire & Rubber Co.*, 2024 WL 5114133, at *4 (S.D. Cal. Dec. 2024).

Even accepting Plaintiff's figures at face value, [ECF No. 1 at ¶ 108, Figs. 5–8], the URLs depicted do not reveal any sensitive medical information. The URLs reflect appointment confirmation pages, clinic locations, and doctor names—none of which disclose a diagnosis, condition, treatment, or any information concerning anyone, let alone Plaintiff's medical history. The figures could just as easily reflect any anonymous in the booking process. In fact, nothing in the figures connects any URL or data transmission to Plaintiff specifically or to anyone at all.

Further, the number of third-party tools embedded on the Website changes nothing. Defendant is not a data broker—it is a single-site operator that used standard marketing tools. Routine scheduling information does not become sensitive simply because multiple advertising platforms received it.

Such routine contact information and scheduling details do not implicate a protectable privacy interest, especially involving a website that exists solely to schedule consultations and is not a patient portal where users access medical records or communicate with their physicians. Absent allegations that any specific confidential health information or communications were disclosed or captured, Plaintiff has not identified the invasion of a legally protected privacy interest.

To the extent Plaintiff's claims rest on the alleged collection of this non-sensitive appointment information, he lacks Article III standing as a matter of law. Nor can Plaintiff manufacture standing by invoking statutory damages or speculative future harm. *See, e.g.*, *Prima Asset Corp. v. Goh*, 2017 WL 11662669, at *3 (C.D.

Cal. Dec. 2017). Accordingly, Plaintiff fails to allege a concrete injury required by Article III.

### 3. Plaintiff Fails to Allege any Fairly Traceable Injury

Even if Plaintiff was able to demonstrate the collection of cognizably private information, he also fails to plausibly allege a fairly traceable injury. Besides discussing hypothetical injuries, [ECF No. 1 at ¶¶ 48, 52, 56, 59, 79, 80, 98, 153], Plaintiff pleads no actual harm.

Unlike cases in which a plaintiff claims some downstream consequence—such as receiving targeted advertising, unwanted solicitations, or misuse of personal data—Plaintiff identifies no resulting harm of any kind. The Complaint identifies only that Plaintiff scheduled an appointment through the Website and provided basic contact and appointment information to do so. [*Id.* ¶ 8]. It does not allege any communications received, misuse of information, loss incurred, or other traceable impact.

Accordingly, Plaintiff fails to allege facts establishing that he suffered a "fairly traceable" injury, as opposed to merely arguing that an interception may have occurred. As Plaintiff identifies no actual impact, the causation element is left to speculation, which Article III does not permit.

### 4. Plaintiff Lacks Standing to Seek Injunctive Relief

Finally, Plaintiff also lacks standing to seek injunctive relief. [ECF No. 1 at ¶¶ 21, 158, 182, 197, g]. Plaintiff does not, and cannot, allege "a sufficient likelihood that he will again be wronged in a similar way," as required for standing to pursue injunctive relief. *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983). Plaintiff is now indisputably aware of Defendant's alleged use of the tracking technologies, as evidenced by his Complaint. Any future use of the Website in light of this knowledge constitutes consent. *See Jones v. Peloton Interactive, Inc.*, 720 F. Supp. 3d 940, 951–52 (S.D. Cal. 2024). Accordingly, Plaintiff lacks standing to pursue injunctive relief.

### C. PLAINTIFF'S CLAIMS ALSO FAIL UNDER RULE 12(b)(6)

Even if the Court were to conclude that Plaintiff's claims were not time barred and that he had standing, they independently fail on the merits.

#### 1. Fed. R. Civ. P. 12(b)(6) Standard

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[A]ll material allegations of the complaint are accepted as true, as well as all reasonable inferences to be drawn from them." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). However, the Court need not assume the truth of legal conclusions merely because they are pleaded in the form of factual allegations. *Iqbal*, 556 U.S. at 677–79; *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011). "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss[.]" *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

#### 2. Electronic Communications Privacy Act – 18 U.S.C. § 2511

(a) ECPA's Party Exception Applies

The ECPA's party exception bars Plaintiff's claim. Where plaintiff asserts an ECPA claim based on the alleged interception by use of a third-party technology on defendant's website, courts have held that the party exception applies. *See, e.g.*, *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 607 (9th Cir. 2020); *B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056, 1065 (C.D. Cal. 2024). Because Defendant was a party to the communications that Plaintiff alleges were unlawfully intercepted, Plaintiff's ECPA claim fails as a matter of law.

///

(b) Defendant Consented to the Tracking Technologies on the Website

Additionally, the ECPA makes clear that liability will only attach to an interception when ***none of the parties*** to the communication have consented. *See, e.g.*, *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 135 (3d Cir. 2015). Here, clearly one of the parties to the communication—Defendant—consented to the use of the Website's tracking technologies. Plaintiff himself alleges that "[p]ursuant to agreements with Third Parties […] Defendant intentionally and voluntarily embedded the Tracking Technologies onto the Website." [*See* ECF No. 1 at ¶¶ 24, 100]. Therefore, Defendant's consent bars any ECPA claim.

(c) The ECPA's "Crime-Tort" Exception Does Not Apply

Lastly, Plaintiff has not identified a single crime or tort separate and independent from the alleged interception. To invoke the Crime-Tort Exception, a plaintiff must plead sufficient facts to establish that the defendant: (1) committed a tortious or criminal act; (2) intercepted the communication for the purpose of such act, and (3) the act was independent of the intentional act of recording or interception itself. *See Saedi v. SPD Swiss Precision Diagnostics GMBH*, 2025 WL 1141168, at *13 (C.D. Cal. Feb. 2025).

The requirement that the alleged criminal or tortious purpose is "independent of the interception itself" is not met when an alleged CIPA violation serves to invoke the Crime-Tort Exception of ECPA. *Saedi*, 2025 WL 1141168, at *13. Here, Plaintiff himself alleges that the same conduct—using tracking technologies to capture and transmit information to Third Parties—both constitutes an "interception" and the criminal or tortious act. [*See* ECF No. 1 at ¶¶ 9, 149, 151–55, 156]. Accordingly, Plaintiff fails to plead an independent criminal or tortious act.

Courts confronting the same type of website tracking allegations have similarly rejected attempts to create an independent predicate offense where the complaint does not plausibly allege that any private health information or the

contents of a communication was actually disclosed. *See, e.g.*, *Eisenhower Med. Ctr.*, 721 F. Supp. 3d at 1065–66. Without factual allegations tying the plaintiff to specific private health-related information or messages, the alleged conduct cannot establish the separate criminal or tortious act necessary.

Plaintiff also does not allege and cannot allege facts demonstrating the second element: that Defendant intercepted his communication "for the purpose of committing" an underlying "criminal or tortious act." *Deteresa v. Am. Broad. Companies, Inc.*, 121 F.3d 460, 466–67 (9th Cir. 1997). As Plaintiff repeatedly alleges, Google is an advertising company that "make[s] money from advertising products [that] deliver relevant ads at just the right time[.]" [ECF No. 1 at ¶¶ 37–37]. Plaintiff alleges that TradeDesk benefits from the use of pixels because "websites and apps will want to employ [its] services to bring in more advertising revenue[.]" [*Id.* ¶ 69]. Plaintiff also claims that Meta "generates revenue by selling advertising space on that website, and other applications it owns[.]" [*Id.* ¶ 78]. And Plaintiff even maintains that Defendant intercepted confidential communications and that this alleged "confidential information is then monetized for targeted advertising purposes, among other things." [*Id.* ¶ 153].

Numerous courts have held that monetizing user data, improving advertising efficiency, or reducing costs do not constitute criminal or tortious endeavors. *See, e.g.*, *Doe v. Talkiatry Mgmt. Servs., LLC*, 2026 WL 206483, at *3 (C.D. Cal. Jan. 2026) (finding that mere collection of personal information for market research and advertising was not for the purpose of committing a crime or tort); *Zarif v. Hwareh.com, Inc.*, 789 F. Supp. 3d 880, 895 (S.D. Cal. 2025) (same); *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 797 (N.D. Cal. 2022) (same). Accordingly, the Crime-Tort Exception does not apply.

///

///

///

(d) No Plausible Interception of "Content" Information Allegation

As set forth in §§ III.B.2, *supra*, and III.C.3.b, *infra*, Plaintiff's ECPA claim independently fails because he does not plausibly allege interception of any communication "contents." *See Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 876 (9th Cir. 2002); 18 U.S.C. §§ 2510(4), (8). Instead, Plaintiff alleges only that he provided routine booking information—such as name, email address, phone number, and appointment details—during the alleged Website interaction. [ECF No. 1 at ¶¶ 8, 27–28]. The Complaint itself characterizes those exchanges as ordinary HTTP requests, cookies, and similar browser-to-server transmissions generated in the course of website navigation. [*Id.* ¶¶ 30–35]. Such allegations concern non-content routing or record information, not the substance or meaning of a communication, and therefore cannot support an ECPA interception claim. *See In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106–07 (9th Cir. 2014); *Yoon*, 549 F. Supp. 3d at 1082–83.

**3. Plaintiff Fails to State a Claim Under Any Clause of § 631(a)**

Section 631(a) is a wiretapping statute that targets the "secret monitoring" of conversations by third parties. *Ribas v. Clark*, 38 Cal. 3d 355, 359 (1985). It contains four distinct violations: (1) intentional wiretapping; (2) willfully reading "the contents or meaning" of a communication in transit without his consent; (3) attempting to use or communicate information obtained through either of the previous two activities, or (4) aiding and abetting a violation of other clauses. *See* Cal. Pen. Code § 631(a).

The first three clauses do not apply. Thus, Plaintiff must show that a violation under Clause Four: that Defendant: (a) criminally aided and abetted (b) a Clause Two eavesdropping by the Third Parties. Plaintiff fails both elements.

///

///

(a) Plaintiff fails to allege violation of § 631(a)'s first three clauses

Clause One. Plaintiff alleges no wiretapping under § 631(a)'s first clause, either by Defendant or the Third Parties. Nor could he, as the first clause does not apply to the internet. *See Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1135–36 (E.D. Cal. 2021).

Clause Two. Plaintiff cannot allege a direct Clause Two Eavesdropping claim against Defendant because Clause Two has a party exception that exempts the party to the communication from liability. *Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732, 744 (N.D. Cal. 2023); *Graham v. Noom, Inc*., 533 F. Supp. 3d 823, 831–32 (N.D. Cal. 2021). And Plaintiff has already acknowledged that Defendant is a party to the communication. [*See, e.g.*, ECF No. 1 at ¶¶ 165–66].

Clause Three. A Clause Three violation is dependent on an underlying violation of Clause One or Two. *Heiting v. Taro Pharms. USA, Inc.*, 728 F. Supp. 3d 1112, 1123 (C.D. Cal. 2024). Plaintiff's Clause Three violation fails for the reasons above.

(b) Plaintiff fails to allege violation of § 631(a) Clause Four

The Complaint does not allege a claim under Clause Four because (a) Plaintiff fails to allege facts demonstrating criminal aiding and abetting by Defendant, and (b) an underlying Clause Two violation by the Third Parties.

***First***, Plaintiff fails to allege facts demonstrating that Defendant "aid[ed], agree[d] with, employ[ed], or conspire[d]" with the Third Parties to commit an underlying violation. Cal. Penal Code § 631. "CIPA is a criminal statute." *Doe*, 2025 WL 2971090, at *1. And "aiding" requires knowledge of the unlawful purpose and intent to facilitate it. *See People v. Lee*, 31 Cal. 4th 613, 624 (2003); *see also Esparza v. UAG Escondido A1 Inc.*, 2024 WL 559241, at *6 (S.D. Cal. Feb. 2024); *Rodriguez v. Ford Motor Co.*, 2024 WL 1223485, at *14–15 (S.D. Cal. Mar. 2024). Thus, aiding and abetting under § 631 requires factual allegations that "support a plausible

inference that Defendant had knowledge of [the Third Parties] unlawful conduct," and that "Defendant acted with the requisite intent to substantially aid such conduct." *Smith v. Yeti Coolers, LLC*, 2025 WL 877127, at *1–2 (N.D. Cal. March 2025).

*Esparza* is directly on point, where the plaintiff brought a § 631(a) claim against a car dealership based on its use of third-party chat software that allegedly intercepted messages. 2024 WL 559241, at *1–2. The plaintiff alleged that the dealership "aided" the software provider merely by embedding the provider's code on its website. *Id.* The court held that embedding third-party code does not plausibly plead the agreement or intent required under Clause Four and dismissed the claim. *Id.* at *6. Even assuming the third party engaged in wiretapping or eavesdropping, the court indicated that it still would not establish the knowledge or intent required to impose liability under Clause Four. *Id.* Plaintiff's claim fails for the same reasons. Besides conclusory allegations, nothing in the Complaint alleges that Defendant knew that the Third Parties intended to violate § 631(a) or had any agreement with them to facilitate an unlawful interception. [ECF No. 1 at ¶¶ 165–69]. Thus, Plaintiff fails to state a claim under § 631(a)'s fourth clause.

***Second***, Plaintiff fails to allege an underlying Clause Two violation by the Third Parties. To demonstrate eavesdropping under CIPA § 631(a), Plaintiff must plausibly allege that the Third Parties (a) "willfully" read, (b) "the contents or meaning" of his communication with Defendant, (c) without consent, while (d) "in transit." Cal. Pen. Code § 631(a). Plaintiff fails every element:

*<u>Content</u>.* Plaintiff's Complaint contains no plausible allegations showing that the Third Parties read or attempted to read the "contents" or meaning of a communication within the meaning of § 631(a). The "contents" of a communication means "the substance, purport or meaning of [an alleged] communication"—i.e., the "intended message conveyed by the communication"—as distinct from "record information regarding the characteristics of the message that is generated in the course of [that] communication." *In re Zynga*, 750 F.3d at 1106; *see also*

*Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1092–93 (N.D. Cal. 2022) (holding that analysis of the "contents" of a communication for a CIPA violation is the same as for the Wiretap Act). Courts have found that the "substance, purport, or meaning" of a communication includes chat transcripts or URLs that specifically reveal sensitive personal information or search terms. *E.g.*, *Esparza v. Kohl's, Inc.*, 723 F. Supp. 3d 934, 945–47 (S.D. Cal. 2024); *Byars v. Goodyear Tire and Rubber Co.*, 654 F. Supp. 3d 1020, 1027 (C.D. Cal. 2023). By contrast, record information (not governed by § 631(a)) includes, among other things, "a person's name [and] address" as well as "subscriber number or identity," "pages viewed, […] the date and time of the visit, […] Plaintiff's IP address, […] location, […] browser type, and the operating system[.]" *In re Zynga*, 750 F.3d at 1106; *see Yoon*, 549 F. Supp. 3d at 1082–83; *Hammerling*, 615 F. Supp. 3d at 1092–93. This kind of record information is not actual message content like text messages or email. *Yoon*, 549 F. Supp. 3d at 1083.

As explained in § III.B.2, *supra*, Plaintiff does not allege any facts relating to his alleged interaction with Defendant's Website that would demonstrate what content information was allegedly disclosed to the Third Parties during his alleged appointment confirmation. Again, he does not allege that he input any private content information. Nor do the figures regarding the URLs fill that gap. They depict only generic booking activity attributable to any anonymous user, not any transmission of private content tied to anyone specifically, let alone the Plaintiff.

Setting aside Plaintiff's conclusory allegations of PII and "sensitive" appointment and personal information, the only information that Plaintiff alleges that Defendant "aids" or "enables" the Third Parties to obtain constitutes "record information." Plaintiff specifically alleges that he only provided Defendant with his name, email address, phone number, and appointment related information, which again reflects generic appointment data, not the content of any user-generated communication. [ECF No. 1 at ¶ 8]. Plaintiff cannot argue that information regarding

the clinic location and appointment date/time are "contents" of a communication, as labeling it as such would expand § 631(a) to cover ordinary website interactions/scheduling.

Plaintiff conclusory labels this information as "PII" and "sensitive" appointment and personal information, asserting that disclosure of this information allowed the Third Parties to infer "directly personal information" tied to alleged "sensitive medical procedures," allegedly allowing Third Parties to know the purpose of the consultation. [*Id.* at ¶¶ 5, 28–29, 108]. However, that is simply routine appointment-related data generated through the normal functioning of the—particularly one that serves as a public marketing website for scheduling consultations, not a patient portal where users access medical records or communicate with physicians—and is best understood as record information. Case law is clear: such information is "record information" that cannot support a § 631(a) wiretapping claim. *See Hammerling*, 615 F. Supp. 3d at 1092–93 (customer names, addresses, and subscriber identifiers constitute record information, as do URLs that reveal only general webpage addresses and basic identification information); *see also Zynga*, 750 F.3d at 1106; *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020).

*__Willfully Reading__*. To meet this prong, Plaintiff must allege that the Third Parties actually read or attempted to read the contents of his communications . *Gutierrez v. Converse Inc.*, 2025 WL 1895315, at *1 (9th Cir. July 2025). Plaintiff does not meet that standard. He does not allege specific facts describing how any Third Party accessed, routed, or intercepted a communication in transit, nor does he plead any nonconclusory facts showing that any Third Party actually read or attempted to read the message contents. Instead, Plaintiff relies on generalized assertions about website functionality, which is insufficient. *Cf. Garcia v. YETI Coolers, LLC*, 2023 WL 5736006, at *5 (C.D. Cal. Sept. 2023) (finding Clause Two adequately pleaded where plaintiff alleged specific facts regarding the reading and

routing of chat messages through a third party's servers during transmission, which are absent here).

*Without Consent*. Liability under § 631(a) requires that the alleged acquisition occur "without the consent of all parties." Cal. Pen. Code § 631(a). As explained in § III.C.2.b, *supra*, Plaintiff's own allegations establish that Defendant intentionally deployed the challenged technology on its Website, which forecloses any claim that the alleged acquisition occurred without consent of a party to the communication.

*In Transit*. Section 631(a) applies only if the interception occurs during the "narrow window" in which the communication is in transit. *NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 938, 951 (N.D. Cal. 2014). A plaintiff must allege that the interception occurred "in transit [. . .] or is being sent from, or received at any place within California." *Mastel*, 549 F. Supp. 3d at 1136. Plaintiff does not plead facts showing that any Third Party accessed communications at that moment of transmission. Instead, he asserts in conclusory fashion that the communications were "intercepted in transit," [ECF No. 1 at ¶ 9, 165], and describes, at a high level, how tracking technologies purportedly duplicate or transmit data, [*Id.* ¶¶ 100–20]. Plaintiff does not allege any concrete facts showing that a specific communication was intercepted contemporaneously as it was sent. The only nonconclusory allegations concern Plaintiff's completion of an online form to schedule a consultation, [*Id.* ¶¶ 8, 27], which does not itself establish interception during the statutorily required "narrow window" of transmission.

**4. Plaintiff's CIPA § 632 Claim Fails**

Section 632 provides liability for a "person who, intentionally and without the consent of all parties to a confidential communication, uses an electronic amplifying or recording device to eavesdrop upon or record the confidential communication, [...] by means of a telegraph, telephone, or other device, except a radio[.]" Plaintiff's § 632 claim fails for three reasons, as explained below.

///

(a) <u>No Confidential Communication Alleged Under § 632</u>

A dispositive problem with Plaintiff's § 632 claim is that he does not and cannot allege facts sufficient to show that he engaged in "confidential communications." A communication is confidential under § 632 only if a party has an objectively reasonable expectation that the conversation is not being overheard or recorded. *See Mitchell v. Sonesta Int'l Hotels Corp.*, 2024 WL 4471772, at *10 (C.D. Cal. Oct. 2024). This depends on the context of the circumstances of the "actual conversation, not its content." *Flanagan v. Flanagan*, 27 Cal. 4th 766, 774, 776–77 (2002).

Federal courts in California have "developed a presumption" that commercial "Internet-based communications are not 'confidential' within the meaning of [§] 632, because such communications can easily be shared." *Swarts*, 689 F. Supp. 3d at 746–47; *see also Griffith v. TikTok, Inc.*, 2024 WL 5279224, at *7 (C.D. Cal. Dec. 2024) (dismissing § 632 claim based on social media communications with third-party software); *Thomas v. Papa Johns Int'l, Inc.*, 2024 WL 2060140, at *4 (S.D. Cal. May 8, 2024) (dismissing § 632 claim based on website or email communications); *Rodriguez*, 2021 WL 2026726, at *7 (same).

Where, as here, alleged internet communications are involved, a plaintiff must show "that there is something unique about [their] particular internet communications which justify departing from the presumption." *Griffith*, 2024 WL 5279224, at *7. Plaintiff alleges no such "unique, definite circumstances." Instead, he alleges only that he provided his name, email address, phone number, clinic location, and date/time of the appointment—information courts have repeatedly held does not constitute a "confidential communication." *E.g.*, *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *3 (N.D. Cal. Oct. 2019); *Thomas*, 2024 WL 2060140, at *4.

Accordingly, Plaintiff fails to allege facts sufficient to establish that his "internet-based" communications with the Website were "confidential." And

because Plaintiff alleges only routine internet-based interactions, his § 632 claim fails as a matter of law and should be dismissed.

(b) Plaintiff Fails to Allege Eavesdropping or Recording

An independent deficiency is Plaintiff's failure to sufficiently allege that Defendant eavesdropped upon or recorded his purportedly "confidential" communications. [ECF No. 1 at ¶¶ 175–82]. Plaintiff conclusory asserts that the Third Parties "used" an electronic recording device to eavesdrop upon and record his communications. [*Id.*]. Plaintiff also pleads no facts showing that Defendant itself operated any recording or eavesdropping device, or that it independently intercepted any communications, as opposed to allegedly embedding third-party tracking tools. And under § 632, "a party cannot 'eavesdrop' on their own conversation," *Turner v. Nuance Commc'ns, Inc.*, 2024 WL 2750017, at *8 (N.D. Cal. May 2024), and website interactions are "by their very nature, recorded," *Licea v. Vitacost.com, Inc.*, 683 F. Supp. 3d 1118, 1122 (S.D. Cal. 2023).

Further, § 632 does not expressly provide for the same derivative liability found in § 631(a), so to avoid surplusage, the grammatical reading where such language is absent is that § 632 does not provide for the same aiding and abetting liability. *See Abbie v. Shasta Cnty.*, 2023 WL 4274135, at *5 n.3 (E.D. Cal. June 2023).

Even if § 632 does permit Plaintiff to bring a claim for allegedly aiding and abetting the Third Parties' purported § 632 violation, this claim necessarily fails for the same reasons that Plaintiff's aiding and abetting claim under § 631(a) fails—i.e., Plaintiff does not establish Defendant's agreement or intent to aid any alleged eavesdropping or recording. § III.C.3.b, *supra.* Alleging that the Third Parties unlawfully used the data collected from the Website does not alter the dispositive fact that Defendant did not knowingly agree or implement the Third Parties' tracking tools for the purpose of violating § 632. *See Smith v. YETI Coolers, LLC*, 754 F. Supp. 3d 933, 943 (N.D. Cal. 2024). Absent allegations of Defendant's own

recording or knowing involvement with a Third Party, the § 632 claim cannot stand, providing an independent basis for dismissal.

(c) CIPA § 632 Does Not Apply to the Internet

Courts interpreting CIPA § 632 have held that they do not extend to routine internet interactions. *See, e.g.*, *A.S. v. SelectQuote Ins. Servs.*, 2024 WL 3881850, at *11 (S.D. Cal. 2024).

**5. Plaintiff Fails to State a Constitutional Invasion of Privacy Claim**

Plaintiff's constitutional privacy claim fares no better, as it is predicated on the same alleged conduct. A California constitutional invasion of privacy claim requires plaintiff to show that (1) he possess a legally protected privacy interest, (2) he maintains a reasonable expectation of privacy, and (3) the intrusion constitutes a serious invasion of the protected privacy interest. *Yoon*, 549 F. Supp. 3d at 1086.

***First***, Plaintiff fails to allege an invasion into information in which he had a reasonable expectation of privacy for the reasons discussed above. Courts assess a reasonable expectation of privacy based on the "customs, practices, and physical settings" surrounding a particular defendant's activities. *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 36 (1994). Website operators "routinely embed content from third-party servers [...] through their use of analytics tools, advertising networks, code libraries and other utilities." *In re Facebook Internet Tracking Litig.*, 263 F. Supp. 3d 836, 846 (N.D. Cal. 2017). Plaintiff cannot plausibly allege a reasonable expectation of privacy based on information that he voluntarily provided for routine commercial purposes. Plaintiff's labeling of routine contact and scheduling information as "PII" or "sensitive" does not change the fact that the information alleged is insufficient to establish a legally protected interest.

***Second***, Plaintiff fails to allege an intrusion that was an "egregious breach of social norms." [ECF No. 1 at 184–97]. The "California Constitution and the common law set a high bar for an invasion of privacy claim." *See Touma v. EEOC*, 2020 WL

2332171, at *15 (C.D. Cal. Jan. 2020). The bar is so high that "[e]ven disclosure of personal information, including social security numbers, does not constitute an 'egregious breach of the social norms' to establish an invasion of privacy claim." *Bongiovanni v. State Farm Fin. Servs., F.S.B.*, 2015 WL 13916261, at *9 (C.D. Cal. July 2015). And courts have found the constitutional privacy standard satisfied only in extreme or highly sensitive contexts, such as the police dissemination of gruesome photographs of a deceased victim or the improper disclosure of a patient's HIV status. *See, e.g.*, *Catsouras v. Dep't of Cal. Highway Patrol*, 181 Cal. App. 4th 856 (2010); *Urbaniak v. Newton*, 226 Cal. App. 3d 1128 (1991).

Courts routinely hold that third-party data collection and disclosure are ordinary commercial behavior, not serious privacy intrusions. *See Hayden v. Retail Equation, Inc.*, 2022 WL 2254461, *7 (C.D. Cal. May 2022) ("Courts have recognized that businesses' collection and disclosure of personal information for business purposes do not constitute a violation of social norms but are rather "routine commercial behavior."); *In re Google, Inc. Privacy Pol'y Litig.*, 58 F. Supp. 3d 968, 973–74, 985, 988 (N.D. Cal. 2014) (finding that the disclosure of personal identifiers, browsing habits, and search queries to third parties constitutes routine commercial behavior, not a serious or egregious privacy violation).

In sum, Plaintiff's allegations that Defendant's Website allegedly collected routine contact and scheduling information for ordinary commercial purposes does not constitute a "highly offensive" intrusion or a "serious" invasion of a protected privacy interest. *See Hill*, 7 Cal. 4th at 37; [ECF No. 1 at ¶¶ 8, 27, 156, 188–89, 194]. To meet this standard, Plaintiffs would need to plausibly allege public disclosure of highly sensitive information, improper use, or conduct grossly departing from ordinary internet practices. *See Deteresa*, 121 F.3d at 465. And since Plaintiff failed to allege facts showing any such highly offensive conduct, this Court should dismiss this claim. *See Hammerling v. Google LLC*, 2022 WL 17365255, at *8–9 (N.D. Cal. Dec. 2022).

## IV. <u>CONCLUSION</u>

For the foregoing reasons, Defendant respectfully requests that the Court grant its Motion.

Respectfully submitted,

Dated: March 20, 2026

CLARK HILL LLP

By: /s/ *Myriah V. Jaworski*
Myriah V. Jaworski
Attorney for Defendant Advanced Hair Restoration, LLC