**BURSOR & FISHER, P.A.**
Sarah N. Westcot (State Bar No. 264916)
701 Brickell Avenue, Suite 2100
Miami, FL 33131
Telephone: (305) 330-5512
Facsimile: (305) 679-9006
E-mail: swestcot@bursor.com

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

BENJAMIN BRAYFIELD, individually and on behalf of all others similarly situated,

Plaintiff,

v.

ADVANCED HAIR RESTORATION, LLC,

Defendant.

Case No. 2:25-cv-11547-ODW-AS

# PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT

Date: April 20, 2026
Time: 1:30 P.M.
Ctrm: 5D
Judge: Hon. Otis D. Wright II

# TABLE OF CONTENTS


PAGE(S)

INTRODUCTION ........ 1

LEGAL STANDARD ........ 1

ARGUMENT ........ 2

I. PLAINTIFF'S CLAIMS ARE TIMELY ........ 2

A. The Delayed Discovery Rule Applies ........ 3

B. Defendant's Privacy Policy is Not Dispositive ........ 4

II. PLAINTIFF SATISFIES ARTICLE III'S STANDING REQUIREMENTS ........ 5

A. Plaintiff Suffered A Concrete And Particularized Injury ........ 6

B. Plaintiff's Injury is Directly Traceable to Defendant's Conduct ........ 9

C. Plaintiff Has Standing to Seek Injunctive Relief ........ 10

III. PLAINTIFF SUFFICIENTLY ALLEGES A VIOLATION OF THE ECPA ........ 10

A. Defendant is Liable Under the Crime-Tort Exception For Invasion of Privacy ........ 10

1. Plaintiff alleges an independent crime ........ 10

2. Defendant acted with criminal or tortious purpose. ........ 12

B. Defendant Intercepted the "Contents" of Plaintiff's Communications ........ 13

IV. PLAINTIFF SUFFICIENTLY STATES CLAIMS UNDER THE CALIFORNIA INVASION OF PRIVACY ACT ........ 13

A. Plaintiff Sufficiently Alleges Third Parties' Violation of the Second Prong of CIPA § 631(a) ........ 13

1. Third Parties intercepted the contents of Plaintiff's communications. ........ 14

2. Third Parties read or attempted to read Plaintiff's communications. ........ 15

3. Defendant never obtained Plaintiff's consent to eavesdrop. .......... 16

4. Interception occurred in transit. .......... 16

B. Plaintiff States a Claim Under the Aiding and Abetting Prong of CIPA § 631(a) .......... 16

C. Plaintiff States A Claim Under Section 632 of CIPA .......... 18

V. PLAINTIFF STATES A CLAIM FOR INVASION OF PRIVACY UNDER THE CALIFORNIA CONSTITUTION .......... 21

CONCLUSION .......... 22

# TABLE OF AUTHORITIES

**PAGE(S)**

## CASES

*A.S. v. SelectQuote Ins. Servs.*,
2024 WL 3881850 (S.D. Cal. Aug. 19, 2024) ........ 20

*Abbie v. Shasta Cnty.*,
2023 WL 4274135 (E.D. Cal. June 29, 2023) ........ 20

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 2

*B.K. v. Desert Care Network*,
2024 WL 1343305 (C.D. Cal. Feb. 1, 2024) ........ 3

*B.K. v. Eisenhower Med. Ctr.*,
721 F. Supp. 3d 1056 (C.D. Cal. 2024) ........ 11

*Balestrieri v. SportsEdTV, Inc.*,
2025 WL 2776356 (N.D. Cal. Sept. 16, 2025) ........ 8

*Brodsky v. Apple, Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020) ........ 14, 15

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023) ........ 10, 14, 18

*Casillas v. Six Flags Entm't Corp.*,
--- F. Supp. 3d ----, 2025 WL 3684543 (C.D. Cal. Dec. 15, 2025) ........ 16

*City of L.A. v. Lyons*,
461 U.S. 95 (1983) ........ 10

*Cousin v. Sharp Healthcare*,
681 F. Supp. 3d 1117 (S.D. Cal. July 12, 2023) ........ 16, 17

*Cousin v. Sharp Healthcare*,
702 F. Supp. 3d 967 (S.D. Cal. 2023) ........ 21

*D'Angelo v. FCA US, LLC*,
726 F. Supp. 3d 1179 (S.D. Cal. 2024) ........ 5, 8

*Doe v. Call-On DOC, Inc.*,
2025 WL 1677632 (S.D. Cal. June 13, 2025) .......... 8

*Doe v. GoodRx Holdings, Inc.*,
2025 WL 2052302 (N.D. Cal. July 22, 2025) .......... 3, 19

*Doe v. Talkiatry Mgmt. Servs., LLC*,
2026 WL 206483 (C.D. Cal. Jan. 22, 2026) .......... 12

*Doe v. Tenet Healthcare Corp.*,
789 F. Supp. 3d 814 (E.D. Cal. 2025) .......... 3, 10, 12, 15

*Esparza v. UAG Escondido A1 Inc.*,
2024 WL 559241 (S.D. Cal. Feb. 12, 2024) .......... 17

*Flanagan v. Flanagan*,
41 P.3d 575 (Cal. 2002) .......... 18

*Fox v. Ethicon Endo-Surgery, Inc.*,
110 P.3d 914 (2005) .......... 3

*Frasco v. Flo Health, Inc.*,
349 F.R.D. 557 (N.D. Cal. 2025) .......... 6, 7, 9

*Gabrielli v. Haleon US Inc.*,
--- F. Supp. 3d ----, 2025 WL 2494368 (N.D. Cal. Aug. 29, 2025) .......... 3, 6

*Gaige v. Exer Holding Co.*,
2025 WL 559719 (C.D. Cal. Jan. 30, 2025) .......... 3, 4, 10, 11

*Gompper v. VISX, Inc.*,
298 F.3d 893 (9th Cir. 2002) .......... 2

*Gray v. Luxottica of Am., Inc.*,
2024 WL 5689566 (C.D. Cal. Dec. 16, 2024) .......... 2

*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023) .......... 6, 14

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) .......... 15

*Hammerling v. Google LLC*,
2022 WL 17365255 (N.D. Cal. Dec. 1, 2022) .......... 21

*Hayden v. Retail Equation, Inc.*, 2022 WL 2254461 (C.D. Cal. May 4, 2022) .......... 22

*Hill v. Nat'l Collegiate Athletic Ass'n*, 865 P.2d 633 (1994) .......... 21

*In re Ambry Genetics Data Breach Litig.*, 567 F. Supp. 3d 1130 (C.D. Cal. 2021) .......... 21

*In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020) .......... 6, 7, 21

*In re Google, Inc. Privacy Policy Litigation,* 58 F. Supp. 3d 968 (N.D. Cal. 2014) .......... 21

*In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778 (N.D. Cal. 2022) .......... 12, 14, 19

*In re Netflix Sec. Litig.,* 712 F. Supp. 3d 1244 (N.D. Cal. 2024) .......... 3

*In re Zynga Priv. Litig.*, 750 F.3d 1098 (9th Cir. 2014) .......... 15

*Jackson v. LinkedIn Corp.*, 744 F. Supp. 3d 986 (N.D. Cal. 2024) .......... 15

*James v. Walt Disney Co.*, 701 F. Supp. 3d 942 (N.D. Cal. 2023) .......... 9

*Jones v. Skullcandy, Inc.*, 2026 WL 699819 (S.D. Cal. Mar. 12, 2026) .......... 9

*Jones v. Tonal Sys., Inc.*, 751 F. Supp. 3d 1025 (S.D. Cal. 2024) .......... 14

*Krzyzek v. OpenX Techs., Inc.*, --- F. Supp. 3d ----, 2026 WL 206855 (N.D. Cal. Jan. 27, 2026) .......... 6, 12, 16

*L.B. v. LinkedIn Corp.*, 2025 WL 2899514 (N.D. Cal. Oct. 10, 2025) .......... 19

*Mata v. Zillow Grp., Inc.*, 2024 WL 5161955 (S.D. Cal. Dec. 18, 2024) .......... 17, 18

*Maghoney v. Dotdash Meredith, Inc.*,
2026 WL 497402 (S.D. Cal. Feb. 23, 2026) .......... 8

*McGowan v. Weinstein*,
505 F. Supp. 3d 1000 (C.D. Cal. 2020) .......... 4

*Nguyen v. Nissan North Am., Inc.*,
487 F. Supp. 3d 845 (N.D. Cal. 2020) .......... 4

*Norman-Bloodsaw v. Lawrence Berkeley Lab'y*,
135 F.3d 1260 (9th Cir. 1998) .......... 1

*Petris v. Sportsman's Warehouse, Inc.*,
736 F.Supp.3d 260 (W.D. Pa. June 3, 2024) .......... 6

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) .......... 2, 6

*Posadas v. Goodyear Tire & Rubber Co.*,
2024 WL 5114133 (S.D. Cal. Dec. 13, 2024) .......... 8

*Prima Asset Corp. v. Goh*,
2017 WL 11662669 (C.D. Cal. Dec. 21, 2017) .......... 8

*R.C. v. Walgreens Co.*,
733 F. Supp. 3d 876 (C.D. Cal. 2024) .......... 7, 11, 15, 21

*R.S. v. Prime Healthcare Servs., Inc.*,
2025 WL 103488 (C.D. Cal. Jan. 13, 2025) .......... 11, 13

*Ramirez v. LasikMD USA, Inc.*,
2026 WL 194855 (S.D. Cal. Jan. 26, 2026) .......... 9

*Revitch v. New Moosejaw, LLC*,
2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) .......... 19

*Riganian v. LiveRamp Holdings, Inc.*,
791 F. Supp. 3d 1075 (N.D. Cal. 2025) .......... 4, 12, 16

*Roe v. Amgen Inc.*,
2024 WL 2873482 (C.D. Cal. June 5, 2024) .......... 21

*Rusow v. SkinSpirit Essential LLC*,
2025 WL 4657637 (N.D. Cal. Oct. 15, 2025) .......... 7, 8, 21

*Safe Air for Everyone v. Meyer*,
373 F.3d 1035 (9th Cir. 2004) .......... 2

*Selby v. Sovrn Holdings, Inc.*,
2025 WL 2950164 (N.D. Cal. Oct. 17, 2025) .......... 13

*Shah v. Capital One Fin. Corp.*,
768 F. Supp. 3d 1033 (N.D. Cal. 2025) .......... 5

*Smith v. Google, LLC*,
735 F. Supp. 3d 1188 (N.D. Cal. 2024) .......... 16, 18, 19

*Smith v. Rack Room Shoes, Inc.*,
2025 WL 1085169 (N.D. Cal. Apr. 4, 2025) .......... 19

*Smith v. Rack Room Shoes, Inc.*,
2025 WL 2210002 (N.D. Cal. Aug. 4, 2025) .......... 11

*Smith v. YETI Coolers, LLC*,
754 F. Supp. 3d 933 (N.D. Cal. 2024) .......... 20

*Spokeo, Inc. v. Robins,*
578 U.S. 330 (2016). .......... 6

*St. Aubin v. Carbon Health Techs., Inc.*,
2024 WL 4369675 (N.D. Cal. Oct. 1, 2024) .......... 17, 21

*Thomas v. Papa Johns Int'l, Inc.*,
2024 WL 2060140 (S.D. Cal. May 8, 2024) .......... 19

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .......... 5, 6, 7, 9

*U.S. v. Jesenik*,
702 F. Supp. 3d 1024 (D. Or. 2023) .......... 20

*Vaccaro v. Altais*,
2023 WL 7003211 (C.D. Cal. Oct. 23, 2023) .......... 20

*Vera v. O'Keefe*,
791 F. Supp. 2d 959 (S.D. Cal. 2011) .......... 19

*Xu v. Reuters News & Media, Inc.*,
2025 WL 3035016 (Santa Clara Super. Ct. Oct. 24, 2025) .......... 9

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) .... 13

*Yoon v. Meta Platforms, Inc.*,
2024 WL 5264041 (N.D. Cal. Dec. 30, 2024) .... 14

*Yumul v. Smart Balance, Inc.*,
733 F. Supp. 2d 1117 (C.D. Cal. 2010) .... 3, 4

*Zarif v. Hwareh.com, Inc.*,
789 F. Supp. 3d 880 (S.D. Cal. 2025) .... 12

**STATUTES**

18 U.S.C. § 2511 .... 10

Cal. Penal Code § 631 .... 19

Cal. Penal Code § 631(a) .... 14, 16, 17, 19

Cal. Penal Code § 632 .... 19, 20

Cal. Penal Code § 632(c) .... 18

**RULES**

Fed. R. Civ. P. 12(b)(1) .... 1

Fed. R. Civ. P. 12(b)(6) .... 2, 4

## INTRODUCTION

"Few subject areas are more personal and more likely to implicate privacy interests than that of one's health or genetic make-up." *Norman-Bloodsaw v. Lawrence Berkeley Lab'y*, 135 F.3d 1260, 1269 (9th Cir. 1998). This case concerns the unauthorized exploitation of precisely that kind of deeply sensitive information. Defendant surreptitiously violated the privacy rights of users of www.advancedhair.com (the "Website") by covertly deploying tracking technologies from Google, Meta, and TradeDesk (collectively, "Third Parties") to intercept patients' personally identifiable information ("PII") and sensitive medical data for Defendant's own commercial benefit without users' knowledge or consent. *See* Complaint ("Compl.") (ECF No. 1) ¶¶ 5, 9.

Unbeknownst to its patients, Defendant installed hidden tracking code that transmitted detailed appointment-related information to third-party advertising and data broker platforms in real time. The intercepted data included, among other things, patients' desired procedure, clinic location, clinician identity, and patient email address. *Id.* ¶ 108. This information—surgical hair transplant appointment details—is plainly medical in nature and falls squarely within the core privacy interests protected by California law.

Rather than meaningfully contest these facts, Defendant seeks dismissal by advancing arguments that ignore both the allegations in the Complaint and controlling legal authority. In short, Defendant's Motion does not identify any pleading deficiency and instead relies on misstatements of both law and fact. The Complaint more than satisfies what is required under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) to state viable claims under the ECPA, CIPA, and California's Constitution. Defendant's Motion should be denied in its entirety.

## LEGAL STANDARD

"A pleading that states a claim for relief must contain … a short and plain statement of the claim showing that the pleader is entitled to relief …." Fed. R. Civ.

P. 8(a)(2). "[D]etailed factual allegations" are not required, but a complaint must provide sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Under Article III, a plaintiff must "have suffered an 'injury in fact' that is both 'concrete and particularized.'" *Popa v. Microsoft Corp.*, 153 F.4th 784, 788 (9th Cir. 2025) (quotation omitted). Concrete harms include tangible harms as well as intangible harms, so long as an intangible harm "bears 'a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts.'" *Gray v. Luxottica of Am., Inc.*, 2024 WL 5689566, at *4 (C.D. Cal. Dec. 16, 2024) (quotation omitted). Where the party asserts a facial challenge, the court limits its inquiry to the allegations set forth in the complaint. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

Federal Rule of Civil Procedure 12(b)(6) provides a mechanism to test the legal sufficiency of the averments in a complaint. Dismissal is appropriate only when the complaint "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When evaluating a complaint, the court accepts material allegations as true and construes them in the light most favorable to plaintiff. *Iqbal*, 556 U.S. at 678. If dismissal is appropriate, leave to amend should be granted unless "the complaint could not be saved by any amendment." *Gompper v. VISX, Inc.*, 298 F.3d 893, 898 (9th Cir. 2002) (internal quotations omitted).

## ARGUMENT

### I. PLAINTIFF'S CLAIMS ARE TIMELY

Defendant argues that "Plaintiff does not plead facts supporting delayed discovery." MTD at 4. That is wrong and ignores Plaintiff's allegations.

### A. The Delayed Discovery Rule Applies

The delayed discovery rule is an exception "to the general rule of accrual." *Fox v. Ethicon Endo-Surgery, Inc.*, 110 P.3d 914, 920 (2005). The discovery rule "delays accrual until the plaintiff has, or should have, inquiry notice of the cause of action." *Id.* To invoke the rule's tolling effects, a plaintiff must "plead facts which show '(1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence.'" *Gaige v. Exer Holding Co.*, 2025 WL 559719, at *3 (C.D. Cal. Jan. 30, 2025) (quoting *Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117, 1130 (C.D. Cal. 2010)).

In wiretapping matters involving complex, online tracking technologies, the weight of authorities favors the application of the discovery rule. *See, e.g.*, *Doe. v. Fullstory, Inc.*, 712 F. Supp. 3d 1244, 1255 (N.D. Cal. 2024) (applying the discovery rule "given the type of case this is – based on defendants' use of highly technical proprietary software"); *Gabrielli v. Haleon US Inc.*, --- F. Supp. 3d ----, 2025 WL 2494368, at *9 (N.D. Cal. Aug. 29, 2025) (following *Fullstory, Inc.* where plaintiff could "not learn of the injury until shortly before filing" due to "defendant's use of highly technical software"); *Doe v. GoodRx Holdings, Inc.*, 2025 WL 2052302, at *10 (N.D. Cal. July 22, 2025) (same); *Doe v. Tenet Healthcare Corp.*, 789 F. Supp. 3d 814, 853–54 (E.D. Cal. 2025) (allegations that web users had "no way of knowing" communications were being intercepted "through the use of hidden tracking pixels" sufficient to apply discovery rule); *B.K. v. Desert Care Network*, 2024 WL 1343305, at *5 (C.D. Cal. Feb. 1, 2024) (declining to dismiss case as time-barred where plaintiffs alleged that "[d]efendants secretly incorporated the Meta Pixel into their Web Properties").

Here, Plaintiff's allegations are nearly identical to allegations in other wiretapping matters where the discovery rule was applied. *Compare* Compl. ¶ 123 ("Through no fault or lack of diligence, Plaintiff and putative class members were deceived and could not reasonably discovery Defendant's deceptive and unlawful

conduct."); ¶ 125 ("Defendant had exclusive knowledge that the Website incorporated the Third Parties' Tracking Technologies and yet failed to disclose to its users . . . information would be disclosed to Third Parties."), *with Gaige*, 2025 WL 559719, at *3 ("Plaintiff alleges that he did not know and had no way of knowing that his personally identifiable information . . . was intercepted and unlawfully disclosed . . . because Defendant kept this secret.").

Despite Plaintiff's well-pled allegations, Defendant contends that "Plaintiff never alleges when or how he discovered the supposed violation, the manner of discovery, or why he could not have discovered it earlier." MTD at 4. These arguments ignore the facts. Plaintiff makes plain that "[t]he earliest . . . [he] could have reasonably discovered Defendant's conduct would have been shortly before the filing of the initial complaint." Compl. ¶ 128. That is because "the Tracking Technologies are entirely invisible to a website visitor." *Id.* ¶ 122. Plaintiff was only made aware of Defendant's unlawful activities through counsel's investigation. *See generally id.* Furthermore, Defendant's cited authorities are unpersuasive, as none of those cases concern online wiretapping. *See Nguyen v. Nissan North Am., Inc.*, 487 F. Supp. 3d 845, 850 (N.D. Cal. 2020) (denying motion for class certification for claims arising from vehicle defects); *McGowan v. Weinstein*, 505 F. Supp. 3d 1000, 1019 (C.D. Cal. 2020) (declining to apply delayed discovery rule where plaintiff admitted to being notified of the alleged harm in 2017 but failed to file complaint until 2019); *Yumul*, 733 F. Supp. 2d at 1131 (finding delayed discovery inapplicable where plaintiff failed to argue application of the rule in her opposition brief).

**B. Defendant's Privacy Policy is Not Dispositive**

Defendant argues its Privacy Policy "confirms that Plaintiff had the means to discover the alleged violation through ordinary diligence." That is wrong.

As an initial matter, courts "may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Riganian v. LiveRamp Holdings,*

*Inc.*, 791 F. Supp. 3d 1075, 1083–84 (N.D. Cal. 2025) (quotation omitted). To the extent Defendant moves for judicial notice regarding its privacy policy to prove inquiry notice, Plaintiff opposes. *See D'Angelo v. FCA US, LLC*, 726 F. Supp. 3d 1179, 1190 (S.D. Cal. 2024) ("Just because the document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth.") (quotation omitted). Crucially, Plaintiff was never presented with Defendant's privacy policy during the appointment process. As such, Defendant never obtained Plaintiff's consent to disclose his appointment details. *See* Compl. ¶¶ 5, 9, 29, 100, 165, 168. Moreover, Defendant's privacy policy does not explicitly put users on notice of the described disclosures.[1] At best, Defendant's attempt to shelter in its own privacy policy presents nothing more than a factual issue. *See Shah v. Capital One Fin. Corp.*, 768 F. Supp. 3d 1033, 1053 (N.D. Cal. 2025) ("Because consent is a factual determination, it cannot be determined on the pleadings.").

## II. PLAINTIFF SATISFIES ARTICLE III'S STANDING REQUIREMENTS

To establish Article III standing, "a plaintiff must show that (i) [they] suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). Defendant challenges whether Plaintiff has satisfied the required elements. *See* MTD at 5–9.

[1] *See Privacy Policy*, ADVANCED HAIR RESOTRATION, https://web.archive.org/web/20190211095300/advancedhair.com/privacy (Feb. 11, 2019) (informing that Personal Information is only shared with third party companies "[w]hen you allow and direct Advanced Hair Restoration to share your Personal Information with third-party company sites or platforms, such as social networking sites.").

### A. Plaintiff Suffered A Concrete And Particularized Injury

Defendant states that Plaintiff "lacks Article III standing as a matter of law," in part, because the disclosure of surgical appointment details "do not implicate a protectable privacy interest." MTD at 6. That is wrong.

The injury suffered by a plaintiff must be one traditionally recognized by American courts. *Petris v. Sportsman's Warehouse, Inc.*, 736 F.Supp.3d 260, 270-71 (W.D. Pa. June 3, 2024) ("The focus of the analysis for Article III purposes is the harm, not the cause of action or remedy. In other words…[i]t is not necessary…for a plaintiff asserting such a claim to plead or establish *the elements* of a traditional cause of action, but rather, only that an analogous harm exists."). As the Supreme Court has recognized, "disclosure of private information[] and intrusion upon seclusion" constitute "harms traditionally recognized as providing a basis for lawsuits in American courts." *TransUnion LLC*, 594 U.S. at 425. In determining "whether an intangible harm constitutes injury in fact, both history and the judgment of Congress are instructive." *Spokeo, Inc.*, 578 U.S. at 331. Specifically, the Supreme Court has instructed courts to identify if an alleged injury bears "a close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts." *Popa*, 153 F.4th at 789 (quotations omitted). The Ninth Circuit is in accord, acknowledging that, "[v]iolations of the right to privacy have long been actionable at common law." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598 (9th Cir. 2020) (quotations omitted). This "right to privacy" includes an "individual's control of information concerning his or her person." *Id.* (quotations omitted); *see also Krzyzek v. OpenX Techs., Inc.*, --- F. Supp. 3d ----, 2026 WL 206855, at *2 (N.D. Cal. Jan. 27, 2026) (holding the same); *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1037 (S.D. Cal. 2023) (same); *Frasco v. Flo Health, Inc.*, 349 F.R.D. 557, 579 (N.D. Cal. 2025) (same); *Gabrielli v. Haleon US Inc.*, 2025 WL 2494368, at *6 (collecting cases) (same).

Consumers possess a reasonable expectation of privacy that private health information will not be disclosed without their consent. *See Frasco*, 349 F.R.D. at 580 (finding standing where plaintiffs "that their highly personal health information was disclosed without their consent"); *see also R.C. v. Walgreens Co.*, 733 F. Supp. 3d 876, 889–895 (C.D. Cal. 2024) (declining to dismiss invasion of privacy claim where "IP address information" was "*paired with* [] private health information conveyed by [plaintiffs'] browsing and shopping activities") (emphasis in original); *Rusow v. SkinSpirit Essential LLC*, 2025 WL 4657637, at *13 (N.D. Cal. Oct. 15, 2025) (concluding that online users possess a "reasonable expectation of privacy over their medical information").

Consumers who have had their health information disclosed without their consent have suffered a harm akin to intrusion upon seclusion. *See TransUnion*, 594 U.S. 413 (claims for disclosure of private information and intrusion upon seclusion involve concrete injuries long recognized as providing a basis to sue); *In re Facebook Internet Tracking Litig.*, 956 F.3d 589, 598 (9th Cir. 2020) (violations of privacy rights have long been actionable at common law and "encompass[] the individual's control of information concerning his or her person").

Here, Defendant enables a multitude of outside entities, including Google, Meta, and TradeDesk, to intercept, disclose, store, and even sell patient information. This information, initiated by Source Code, appears in the form of 'custom events,' full-string URLs, button clicks, and more. *See* Compl. ¶¶ 49, 75, 102, 105. This information is not "routine contract information and scheduling details," as Defendant argues. MTD at 7. Rather, Third Parties are provided with information that reveal "the location of the appointment, the name of the consulting doctor, the patient's unhashed email address, and the purpose of the consultation (for hair transplant surgery)." *Id.* ¶ 108; Figs. 4–8. In addition to disclosing patient email addresses, the disclosures are further attributed to patient identity through the disclosure of numerous other identifiers such as Facebook ID, auid/cid, cookie

identifiers, and device identifiers. *See id.* ¶¶ 44, 49, 75, 105, 117; *see also Balestrieri v. SportsEdTV, Inc.*, 2025 WL 2776356, at *9 (N.D. Cal. Sept. 16, 2025) (finding most courts have found that Facebook IDs are PII). These allegations go far beyond merely "selecting an office location and [] available time slot;" Defendant's claim that Plaintiff's allegations fail to reveal "Plaintiff's medical condition, treatment, or any confidential communication" are contradicted by the plain allegations of the Complaint. MTD at 7.

The authorities that Defendant cites are inapposite. For example, in *Maghoney v. Dotdash Meredith, Inc.*, the plaintiff failed to allege that his web searches were accompanied by any personally identifiable information. 2026 WL 497402, at *5 (S.D. Cal. Feb. 23, 2026) ("Plaintiff does not allege that his name, postal address, email address, telephone number, or any other personal identifiers were collected."). Moreover, none of the cases cited by Defendant involve the creation of a medical appointment. *See Posadas v. Goodyear Tire & Rubber Co.*, 2024 WL 5114133, at *3 (S.D. Cal. Dec. 13, 2024) (anonymous session replay technology installed on a retail site); *Prima Asset Corp. v. Goh*, 2017 WL 11662669, at *3 (C.D. Cal. Dec. 21, 2017) (lack of standing in case regarding exposure to tax liability).

Plaintiff's core allegations are simple. Defendant enabled unknown Third Parties in intercepting all details of his medical appointment. As such, Third Parties learned the clinic location, clinician name, patient email address, and purpose of the consultation of Plaintiff's consultation. Compl. ¶ 108; *see also Rusow*, 2025 WL 4657637, at *13 (holding plaintiff possessed a "reasonable expectation of privacy over the [appointment] information she input on SkinSpirit's website."). These allegations are more than sufficient to invoke Article III standing. *See Doe v. Call-On DOC, Inc.*, 2025 WL 1677632, at *4 (S.D. Cal. June 13, 2025) ("Plaintiff claims her right to privacy was violated when her PII and PHI were intercepted by third parties on Defendant's website, an injury that is concrete and particularized."); *D'Angelo*, 726 F. Supp. 3d at 1193–94 (disclosure of chat logs sufficient for Article

III standing); *Jones v. Skullcandy, Inc.*, 2026 WL 699819, at *5 (S.D. Cal. Mar. 12, 2026) (allegations that retail site collected browsing histories, purchase behavior, PII, identifiers, and consumer profiles sufficient for Article III standing) (collecting cases); *see also James v. Walt Disney Co.*, 701 F. Supp. 3d 942, 950 (N.D. Cal. 2023) ("At the very least, Plaintiffs have made sufficient allegations to create a question of fact as to whether there is sufficiently personal information to support standing.").

### B. Plaintiff's Injury is Directly Traceable to Defendant's Conduct

Defendant provides a generalized argument that Plaintiff "fails to plausibly allege a fairly traceable injury." MTD at 9. Yet, Plaintiff makes straightforward allegations that "Defendant intentionally configured the Tracking Technologies" and "Defendant install[ed] the[] Tracking Technologies." Compl. ¶ 105–06; *see also* ¶¶ 28, 100, 103, 109, 111, 191; *Xu v. Reuters News & Media, Inc.*, 2025 WL 3035016, at *3 (Santa Clara Super. Ct. Oct. 24, 2025) ("[I]t appears Defendant does not account for Plaintiff's allegation that it was responsible for the installation of the Trackers.").

Furthermore, Defendant is wrong in stating that "Plaintiff identifies no resulting harm of any kind." MTD at 9. The harm alleged is Plaintiff's loss of control over his own private information and invasion of privacy. *TransUnion LLC*, 594 U.S. at 424; *Frasco*, 349 F.R.D. at 579 ("[T]he legal injury at the heart of plaintiffs' case — the capture of personal information without a user's consent — occurs when the personal information is obtained in the first instance."). This holds especially true when the type of information disclosed is medical in nature. *See Ramirez v. LasikMD USA, Inc.*, 2026 WL 194855, at *2 (S.D. Cal. Jan. 26, 2026) ("The unauthorized disclosure of personally identifiable, confidential medical information is a sufficiently concrete and particularized harm for standing."). Even if Defendant's traceability argument has merit (it does not), Plaintiff has still met his

burden. *See Gaige*, 2025 WL 559719, at *2 (finding allegations similar to Plaintiff's "sufficient for purposes of traceability").

### C. Plaintiff Has Standing to Seek Injunctive Relief

To establish standing for injunctive relief, plaintiffs must possess "continuing, present adverse effects." *City of L.A. v. Lyons*, 461 U.S. 95, 102 (1983). Here, Plaintiff will continue to suffer if denied injunctive relief. Defendant and the Third Parties still possess Plaintiff's private information, and Third Parties are still embedded in the manner described throughout the Complaint on the Website. *See Brown v. Google LLC*, 685 F. Supp. 3d 909, 926 (N.D. Cal. 2023) ("Google's conduct has not stopped. Plaintiffs have demonstrated that absent an injunction, Google will continue to collect users' private . . . data for its own use"). Plaintiff is thus at risk of data breaches related to the disclosure of his medical information, targeted advertising related to his browsing information, and embarrassment or harassment.

## III. PLAINTIFF SUFFICIENTLY ALLEGES A VIOLATION OF THE ECPA

Under the ECPA, 18 U.S.C. § 2511, a party to the communication is shielded by the "party exemption." *See, e.g.*, *Tenet Healthcare Corp.*, 789 F. Supp. 3d at 848. However, this exemption "has its own carve-out known as the crime-tort exception." *Id.* (quotation omitted). Defendant argues that the crime-tort exception does not apply because (1) "the alleged crime must be independent of the intentional act of recording or interception" done (2) "for the purpose of committing an underlying criminal or tortious act." MTD at 22 (quotations omitted). Defendant falls squarely within the exception.

### A. Defendant is Liable Under the Crime-Tort Exception For Invasion of Privacy

#### 1. <u>Plaintiff alleges an independent crime.</u>

"[A] plaintiff must plead sufficient facts to support an inference that the offender intercepted the communications for the purpose of a tortious or criminal act

that is *independent* of the . . . recording or interception itself." *Gaige*, 2025 WL 559719, at *5 (emphasis in original) (quotations omitted). According to Defendant, Plaintiff's allegations fail because "an alleged CIPA violation [cannot] serve[] to invoke the Crime-Tort Exception." MTD at 11. Defendant misinterprets the "separate and independent" component of the statute. *See R.S. v. Prime Healthcare Servs., Inc.*, 2025 WL 103488, at *5 (C.D. Cal. Jan. 13, 2025). In Defendant's view, its tortious invasion of privacy is excused because it occurred simultaneous to the underlying interception. And yet, "[i]t is irrelevant that [Defendant] allegedly disclosed the Private Information at the same time as its interception." *Id.* Here, the independent harm stems from Defendant's disclosure of "Plaintiff's . . . electronic communications to Third Parties through the Tracking Technologies, while knowing or having reason to know that the information was obtained through [] interception." Compl. ¶ 154; *see also* ¶¶ 151; 155–57 (explaining how Defendant discloses medical information to third parties independent of its receipt of health information). As such, Plaintiff sufficiently pleads that Defendant's "intentional *disclosure* of the collected Private Information . . . constitutes a further impropriety independent . . . from [its] *interception*. *R.S.*, 2025 WL 103488, at *5 (emphasis in original); *see also Smith v. Rack Room Shoes, Inc.*, 2025 WL 2210002, at *5 (N.D. Cal. Aug. 4, 2025) (holding that allegations of tortious invasion of privacy were "analogous to the purpose of engaging in a HIPAA violation"); *R.C.*, 733 F. Supp. 3d at 901–02 (finding tortious invasion of privacy as a separate and independent tort under the ECPA).

Defendant's reliance on *B.K. v. Eisenhower Med. Ctr.* is misplaced. MTD at 12. In *B.K.*, the plaintiff's conclusory allegations were insufficient to infer an independent crime or tort separate from the initial interception. 721 F. Supp. 3d 1056, 1065 (C.D. Cal. 2024). In short, Plaintiff's allegations demonstrate how Third Parties' use of Plaintiff's health information (via Defendant's actions) constitutes a tortious invasion of privacy separate from Defendant's interception. *See* Compl. ¶¶

47–48, 52, 56, 59, 79, 98, 153 (explaining how Third Parties monetize Plaintiff's information). Defendant acted with full knowledge of this end result. *Id.* ¶ 154–55.

**2. <u>Defendant acted with criminal or tortious purpose.</u>**

Defendant claims it cannot have acted with a criminal or tortious purpose when it was motivated by marketing efficiency or financial gain. This argument has been thoroughly rejected by numerous courts within the Ninth Circuit, including courts within this District. The result should be no different here.

Defendant cites to authorities to support the claim that "monetizing user data, improving advertising efficiency, or reducing costs do not constitute criminal or tortious endeavors." MTD at 12 (citing *Doe v. Talkiatry Mgmt. Servs., LLC*, 2026 WL 206483, at *3 (C.D. Cal. Jan. 22, 2026); *Zarif v. Hwareh.com, Inc.*, 789 F. Supp. 3d 880, 895 (S.D. Cal. 2025); *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 797 (N.D. Cal. 2022)). However, the weight of authority supports the application of the crime-tort exception. *See, e.g.*, *Krztzek*, 2026 WL 206855, at *8 ("The Court is not persuaded by the authorities OpenX's cites to argue financial motives cannot constitute tortious motive."); *Riganian*, 791 F. Supp. 3d at 1090 ("[C]omitting a tort and seeking a profit are not mutually exclusive (if anything, the latter is often the reason for the former)"); *Tenet Healthcare Corp.*, 789 F. Supp. 3d at 850 ("The court joins those courts that have held a monetary purpose does not insulate a party from liability under the ECPA.").

To illustrate the problematic reasoning of accepting Defendant's argument, *R.S.* is instructive:

> Take blackmail, which the Ninth Circuit gave as an example of an ECPA violation. Under Prime Healthcare's reading, the ECPA would not prohibit a person from intercepting a communication with the intent to use that communication to blackmail so long as the ultimate reason for the blackmail was to make money. There, the interceptor's primary purpose would be to make money. And blackmail would merely be a means by which to make money. Of course, this

> is often the end goal for blackmail. Under Prime Healthcare's reading, blackmail would rarely, if ever, violate the ECPA. This cannot be the case.

2025 WL 103488, at *7 (cleaned up).

Accordingly, Defendant should not be shielded from its criminal or tortious violations simply because it was motivated by pecuniary gain.

### B. Defendant Intercepted the "Contents" of Plaintiff's Communications

As described § IV.A.1, *infra*, Plaintiff has sufficiently alleged the interception of the "contents" of his communications. Defendant wrongly characterizes the details of Plaintiff's medical appointment as nothing more than "routine booking information" in the form of "ordinary HTTP requests." MTD at 13. This ignores Plaintiff's allegations; for instance, Plaintiff makes clear that Defendant discloses "the buttons, links, pages, full-length URLs, and tabs [users] click/view related to the services sought from Defendant." Compl. ¶ 105; *see also* ¶ 108, Figs. 4–8. This content represents the user-generated information "that reflect[s] not only the website visited, but also, for example, search queries and specific items Plaintiffs viewed." *Gilligan v. Experian Data Corp.*, 2026 WL 32259, at *3 (N.D. Cal. Jan. 6, 2026); *Selby v. Sovrn Holdings, Inc.*, 2025 WL 2950164, at *3 (N.D. Cal. Oct. 17, 2025) (same). This is distinguishable from automated routing or record information. *See Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1077 (C.D. Cal. 2021) (anonymous session replay recorded keystrokes and clicks for troubleshooting purposes).

## IV. PLAINTIFF SUFFICIENTLY STATES CLAIMS UNDER THE CALIFORNIA INVASION OF PRIVACY ACT

### A. Plaintiff Sufficiently Alleges Third Parties' Violation of the Second Prong of CIPA § 631(a)

Defendant contends that "Plaintiff cannot allege a direct Clause Two Eavesdropping claim against Defendant because Clause Two has a party exception

that exempts the party to the communication for liability." MTD at 14. However, unlike the Federal Wiretap Act, CIPA is a "two-party consent" statute. *Brown v. Google LLC*, 685 F. Supp. 3d 909, 937 (N.D. Cal. 2023); *see also* Cal. Penal Code § 631(a) (imposing liability on those "who willfully and without the consent *of all parties to the communication* . . .") (emphasis added). Therefore, Defendant is liable under Clause Four for aiding Third Parties' underlying Clause Two violation. Plaintiff has met each and every element.

### 1. <u>Third Parties intercepted the contents of Plaintiff's communications.</u>

Under both the ECPA and CIPA, courts interpret "content" as being "the intended message conveyed by the communication . . . not includ[ing] record information." *Yoon v. Meta Platforms, Inc.*, 2024 WL 5264041, at *4 (N.D. Cal. Dec. 30, 2024) (quotations omitted); *see also Brodsky v. Apple, Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020) ("The analysis for a violation of CIPA is the same as that under the federal Wiretap Act."). Courts within the Ninth Circuit have agreed that "content" includes "the names of buttons clicked." *In re Meta*, 647 F. Supp. 3d at 795. "Content" also includes "URLs" and "the particular document" requested. *Brown*, 685 F. Supp. 3d at 936. The statute itself provides little guidance. *Greenley*, 684 F. Supp. 3d at 1051. As one court put it, "CIPA § 631(a)[ii] protects only the internal, user-generated material of a message, not routine identifiers, whether automatically generated or not." *Jones v. Tonal Sys., Inc.*, 751 F. Supp. 3d 1025, 1037–38 (S.D. Cal. 2024).

Plaintiff clearly alleges that Third Parties intercept the content of patient communication, rather than mere record information. *See* Compl. ¶¶ 8–9, 27, 29, 105–08. By intercepting button clicks and full-length URLs, Third Parties readily identified the details of Plaintiff's appointment. In other words, the "intended message" conveyed in the URLs is Plaintiff's attempt to seek a hair transplant. As such, Third Parties learned where the appointment was to take place, which doctor

Plaintiff was consulting with, and for what purpose. Defendant tries (and fails) to label Plaintiff's user-generated, medical searches as mere record information. MTD at 16. Moreover, this information was not "anonymous" as argued by Defendant. *Id.* In addition to disclosing Plaintiff's unhashed email address, Defendant also provides Third Parties with numerous identifiers that further constitute PII. *See* Compl. ¶¶ 109–120. Every case Defendant cites is factually inapposite. None of the cases involve the creation of an appointment, much less a medical appointment. *See* *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1093 (N.D. Cal. 2022) (types of apps a user uses not deemed "content"); *Brodsky*, 445 F. Supp. 3d at 127 (user names and passwords not content).

And *In re Zynga Priv. Litig.* made clear that "[u]nder some circumstances, . . . a URL containing [a] search term to a third party could amount to disclosure of the contents of a communication." 750 F.3d at 1108–09. Since then, courts have made clear that full-string URLs, particularly when related to health information, qualify as 'contents.' *See, e.g.*, *Tenet Healthcare Corp.*, 789 F. Supp. 3d at 837; *R.C.*, 733 F. Supp. 3d at 902–03.

**2. <u>Third Parties read or attempted to read Plaintiff's communications.</u>**

Plaintiff's "complaint contains a plethora of allegations that [each of the Third Parties] read and used the data it acquired from [Defendant's Website] for its own marketing services." *Jackson v. LinkedIn Corp.*, 744 F. Supp. 3d 986, 994 (N.D. Cal. 2024). Plaintiff explains, for example, that "Google views and processes every piece of information collected . . . and uses it to assist with data analytics, marketing, and targeted advertising." Compl. ¶ 62. Similar allegations are made with respect to each third party. *See id.* ¶¶ 95–98 (Meta); ¶¶ 74–75 (TradeDesk). Plaintiff even provides examples of the ways in which the Third Parties intercept and read each patient's communications in real time. *Id.*, Figs. 4–8. At this stage, Plaintiffs

allegations that Third Parties "read or used the data collected" are to "be taken as true." *Smith v. Google, LLC*, 735 F. Supp. 3d 1188, 1197–98 (N.D. Cal. 2024).

**3. <u>Defendant never obtained Plaintiff's consent to eavesdrop.</u>**

As stated in § IV.A, *supra*, CIPA is a two-party consent statute. Therefore, it is of no import that Defendant consented to the interception of communications by Third Parties. Here, Plaintiff makes clear that he never consented to the interceptions. *See* Compl. ¶¶ 5, 9, 29, 100, 165, 168.

**4. <u>Interception occurred in transit.</u>**

Defendant's arguments concerning real-time interceptions fail as well. As to whether Third Parties' reading of the communications happens "in transit," Plaintiff alleges that Defendant, "via the tracking technologies" communications "in real time," Plaintiff's "sensitive and personal information to Third Parties." Compl. ¶ 152. These transmissions occur "in real time" because Third Parties, as enabled by Defendant, "routed Plaintiff's . . . electronic communications to Third Parties' servers." *Id.* ¶ 169. Plaintiff does not fail to allege a real time interception. In fact, many courts within the Ninth Circuit accept allegations of "in transit" interception at the pleadings stage. *See, e.g.*, *Casillas v. Six Flags Entm't Corp.*, --- F. Supp. 3d ----, 2025 WL 3684543, at *8 (C.D. Cal. Dec. 15, 2025) (finding allegations of real-time interception sufficient to state a 631(a) claim); *Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1131 (S.D. Cal. July 12, 2023) (holding that the "in-transit" allegations are best left for resolution at the summary judgment stage."); *see also Krzyzek*, 2026 WL 206855, at *7 (holding "that factual dispute is not appropriately resolved" at the pleadings stage); *Riganian*, 791 F. Supp. 3d at 1092 (same).

**B. Plaintiff States a Claim Under the Aiding and Abetting Prong of CIPA § 631(a)**

Defendant claims it is not derivatively liable for aiding or abetting any underlying CIPA violation by the Third Parties. *See* MTD at 14–15. That is wrong.

The fourth prong of CIPA § 631(a) imposes derivative liability on any person "who aids, agrees with, employs, or conspires with any person" to cause any of the acts described in the first three clauses. Cal. Pen Code § 631(a). As an initial matter, "the statute as worded does not include an intent standard." *St. Aubin v. Carbon Health Techs., Inc.*, 2024 WL 4369675, at *7 (N.D. Cal. Oct. 1, 2024). Courts in the Ninth Circuit have taken different approaches regarding what scienter is required. *Compare Cousin*, 681 F. Supp. 3d at 1130 (declining to read "aids, agrees with, employs, or conspires with as solely aiding and abetting") (quotations omitted), *with Esparza v. UAG Escondido A1 Inc.*, 2024 WL 559241, at *6 (S.D. Cal. Feb. 12, 2024) (reading in the "common law [civil tort] definition of aiding and abetting" to the derivative liability prong of CIPA). The common law definition is a more stringent pleading standard; a person may be held liable under it if they:

> know the other's conduct constitutes a breach of duty and give substantial assistance or encouragement to the other to so act ***or*** give substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person.

*Id.* at *6 (cleaned up) (emphasis added).

Plaintiff urges the Court to adopt the approach taken in *Cousin* "because it more closely follows the language of the statute." *St. Aubin*, 2024 WL 4369675, at *8 (following the approach adopted in *Cousin*).

However, Plaintiff's allegations are still more than sufficient to satisfy common law intent. In *Mata v. Zillow Grp., Inc.*, for example, a plaintiff alleged that his viewing history of available properties was transmitted by Zillow to Facebook. 2024 WL 5161955, at *1 (S.D. Cal. Dec. 18, 2024). Applying the same legal standard in *Esparza*, the Court found allegations that "Defendant knowingly programmed such third-party tracking technology into its website for advertising

purposes" sufficient to plead a theory of aiding and abetting. *Id.* at *7 (quotations omitted) (collecting cases).

Here, Plaintiff substantially assisted the Third Parties because it "intentionally and voluntarily embedded the Tracking Technologies onto the Website." Compl. ¶ 100. Moreover, as a provider of healthcare, Defendant possessed the knowledge that "customers reasonably expect their sensitive and identifiable information to be kept confidential." *Id.* ¶ 106. And yet, Defendant disclosed sensitive information anyway because "confidential information is then monetized for targeted advertising purposes." *Id.* ¶ 153. Nothing more is required.

### C. Plaintiff States A Claim Under Section 632 of CIPA

Defendant argues that "Plaintiff's § 632 claim fails for three reasons." MTD at 18. All three of Defendant's arguments lack merit.

***First***, Defendant argues that "Plaintiff does not and cannot allege he engaged in 'confidential communications,' within the meaning of § 632." MTD at 19. As an initial matter, there is no presumption that internet-based communications are not confidential. *Brown*, 685 F. Supp. 3d at 938 ("California courts have never recognized a legal 'presumption' that internet communications are not confidential under Section 632."); *Smith*, 735 F. Supp. 3d at 1199 (same). Instead, a communication is confidential under § 632 so long as a party "has an objectively reasonable expectation that the conversation is not being overheard or recorded." *Flanagan v. Flanagan*, 41 P.3d 575, 582 (Cal. 2002). The proper inquiry "is whether 'any party to the communication desires for it to be confined to the parties thereto.'" *Brown*, 685 F. Supp. 3d at 938 (citing Cal. Pen Code § 632(c)).

Plaintiff clearly alleges that he reasonably expected his communications regarding his hair transplant consultation would remain confidential. *See* Compl. ¶¶ 4, 28, 106, 176, ("Plaintiff and Class Members expected their communications to Defendant to be confined"). Additionally, courts have routinely recognized communications as being "confidential" when show to be sensitive under applicable

laws, regulations, or industry norms. *See, e.g.*, *In re Meta*, 647 F. Supp. 3d at 799 (finding communications containing PHI to be confidential); *Smith*, 735 F. Supp. 3d at 1199–200 (holding sensitive financial information submitted on a tax preparation website to be confidential). Nowhere is this more apparent than in the context of medical information. *See Doe v. GoodRx Holdings, Inc.*, 2025 WL 2052302, at *14 (N.D. Cal. July 22, 2025) ("Plaintiffs' interactions with the GoodRx platform . . . seeking treatment for specific conditions . . . constitute confidential communications.") (collecting cases). Here, the information disclosed was medical in nature. *See* Compl. ¶¶ 4–5, 49, 87, 185, 197. This is distinguishable from Defendant's cited authorities. *See Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *3 (N.D. Cal. Oct. 23, 2019) (retail site communications); *Thomas v. Papa Johns Int'l, Inc.*, 2024 WL 2060140, at *5 (S.D. Cal. May 8, 2024) (same). And even if the Court were to impose a "presumption" that online communications are not confidential under § 632, Plaintiff would still overcome it. *See L.B. v. LinkedIn Corp.*, 2025 WL 2899514, at *18 (N.D. Cal. Oct. 10, 2025) ("[C]ommunications made in the context of a patient-medical provider relationship are readily distinguishable from online communications in general.") (quotation omitted).

***Second***, Defendant wrongly states that it cannot "eavesdrop on [its] own conversation," and that Section 632 "does not provide for the same aiding and abetting liability" found in § 631(a). MTD at 20. However, § 632 allows for derivative liability. "All persons concerned in the commission of a crime . . . or aid and abet in its commission . . . are principals in any crime so committed." Cal Pen Code § 31. "Nothing in the language of CIPA explicitly limits the application of section 31." *Smith v. Rack Room Shoes, Inc.*, 2025 WL 1085169, at *5 (N.D. Cal. Apr. 4, 2025). As a result, § 31, when applied to § 632, "allows for [Defendant] to be viewed as a principal whether or not [it] physically recorded the confidential conversation." *Vera v. O'Keefe*, 791 F. Supp. 2d 959, 965 (S.D. Cal. 2011); *see also*

*Vaccaro v. Altais*, 2023 WL 7003211, at *5 (C.D. Cal. Oct. 23, 2023) (same). Therefore, courts "can look to whether the defendant, at a minimum, intended for a surreptitious recording of confidential information to occur in her presence or participated in the recording." *Vaccaro*, 2023 WL 7003211, at *5 (quotations omitted).

Defendant provides no reason why CIPA § 632 should not be interpreted in this manner. Defendant's argument regarding "surplusage" is unjustified. MTD at 20. Defendant's lone citation to *Abbie v. Shasta Cnty.* did not involve a CIPA claim, and should be disregarded. 2023 WL 4274135, at *1 (E.D. Cal. June 29, 2023). Defendant has not demonstrated that the readings of Sections 631 or 632 "cause[] it to duplicate another provision or to have no consequence." *See U.S. v. Jesenik*, 702 F. Supp. 3d 1024, 1034, n.8 (D. Or. 2023) (quotations omitted).

Furthermore, Defendant misstates the scienter imposed by § 632 of CIPA. In Defendant's view, Plaintiff has "not establish[ed] Defendant's agreement or intent to aid" the Third Parties. MTD at 20. Defendant cites to *Smith v. YETI Coolers, LLC*, which imposed the civil liability standard for aiding and abetting. 754 F. Supp. 3d 933, 944 (N.D. Cal. 2024)[2]. However, as explained in § IV.B, *supra*, Defendant's argument is not dispositive.

***Third***, Defendant relies on *A.S. v. SelectQuote Ins. Servs.* to argue that § 632 does not apply to internet communications. MTD at 21. However, Defendant confuses two entirely different provisions of CIPA. The provision contemplated in *SelectQuote* is § 632.7(a) of the CIPA, which prohibits the interception of communications ***between telephones***. 2024 WL 3881850, at *11 (S.D. Cal. Aug. 19, 2024) (emphasis added). Plaintiff states a claim under § 632(a) of the CIPA.

---

[2] The court in *Smith* granted the defendant's motion to dismiss the plaintiff's claim under Section 632 after finding that "Plaintiff did not plead sufficient facts to support a plausible inference that Defendant had knowledge of [the third party's] conduct violating the statute." *Id.* at 944. However, *Smith* did not concern the disclosure of protected health information in violation of HIPAA.

## V. PLAINTIFF STATES A CLAIM FOR INVASION OF PRIVACY UNDER THE CALIFORNIA CONSTITUTION

Defendant contends Plaintiff does not sufficiently allege an invasion of privacy claim under the California Constitution because (1) Plaintiff did not possess "a reasonable expectation of privacy" and (2) Defendant's actions were not "an egregious breach of social norms." MTD at 21. Wrong again.

To state a claim for invasion of privacy, a plaintiff must allege that "(1) there exists a reasonable expectation of privacy, and (2) the intrusion was highly offensive." *In re Facebook*, 956 F.3d at 601. As a matter of law, Plaintiff possessed a reasonable expectation of privacy in his health information. *See St. Aubin*, 2024 WL 4369675, at *12 ("It is well-settled under California law that, although not absolute, people have a privacy interest in their medical history and information.") (quotations omitted); *see also R.C.*, 733 F. Supp. 3d at 889 (finding that PII paired with "private health information . . . creates a legally protected privacy interest."); *Rusow*, 2025 WL 4657637, at *13 (finding "a legally recognizable privacy interest").

As to offensiveness, courts are hesitant to resolve "[w]hether an alleged intrusion is highly offensive" at the motion to dismiss stage. *See Cousin*, 702 F. Supp. 3d at 974; *see also Roe v. Amgen Inc.*, 2024 WL 2873482, at *4 (C.D. Cal. June 5, 2024) (finding a factual dispute as to offensiveness); *Rusow*, 2025 WL 4657637, at *14 (same). Here, Defendant's actions flout accepted social norms. *See In re Ambry Genetics Data Breach Litig.*, 567 F. Supp. 3d 1130, 1143 (C.D. Cal. 2021) ("Courts have refused to dismiss invasion of privacy claims . . . where, as here, a data breach involved medical information").

Defendant's cited authorities fail to disturb these accepted holdings, because none of them involve the disclosure of medical information. *See Hammerling*, 2022 WL 17365255, at *9 (finding that tracking the frequency or duration of app usage was not highly offensive); *In re Google, Inc. Priv. Policy Litig.*, 58 F. Supp. 3d 968, 985 (N.D. Cal. 2014) (concerning basic digital information); *Hill v. Nat'l Collegiate*

*Athletic Ass'n*, 865 P.2d 633, 669 (1994) (concerning the ability to drug test collegiate athletes); *Hayden v. Retail Equation, Inc.*, 2022 WL 2254461, at *8 (C.D. Cal. May 4, 2022) (concerning retail data).

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court deny Defendant's Motion in its entirety. Alternatively, if the motion is granted in any respect, Plaintiff requests he be given leave to amend.

Dated: March 30, 2026

**BURSOR & FISHER, P.A.**

By: */s/ Sarah N. Westcot*
Sarah N. Westcot

Sarah N. Westcot (State Bar No. 264916)
701 Brickell Avenue, Suite 2100
Miami, FL 33131
Telephone: (305) 330-5512
Facsimile: (305) 679-9006
E-mail: swestcot@bursor.com

*Counsel for Plaintiff*

## LOCAL RULE 11-6.2 CERTIFICATION OF COMPLIANCE

The undersigned counsel of record for Plaintiff Benjamin Brayfield, certifies that this brief contains 6,997 words, which complies with the world limit of L.R. 11-6.1.

Dated: March 30, 2026

/s/ *Sarah N. Westcot*
Sarah N. Westcot